IGNATZ MARTIN, Appellant, *v.* LEVERETT F. CRUMB, Respondent.

Contract — employment of broker to sell land — revocation — question for jury — reporting of offers of less than price named does not terminate employment.

On examination of the contents of a letter from defendant to a broker he had theretofore employed to make a sale of real property, in the light of the circumstances connected with the transaction, *held,* that it cannot be said, as a matter of law, that the broker should have understood the letter as a revocation of the authority which the defendant at the outset of their dealings had conferred upon him, and that it is at the most ambiguous, and its construction for the jury. Nor did the broker put an end to his employment by reporting offers lower than the price named by his employer, but is entitled to his commissions on procuring a purchaser who was willing and able to buy the property originally placed in his hands by defendant at the price named by him.

*Martin* v. *Crumb,* 158 App. Div. 228, reversed.

(Argued November 30, 1915; decided January 4, 1916.)

APPEAL from a judgment, entered July 31, 1913, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The action is against an agent for the breach of an implied warranty of authority. The plaintiff is a broker; the defendant, an attorney at law. About twenty-five acres of land in Queens county had been transferred under the will of John C. Debevoise. Fifteen acres were owned by Solomon D. Purdy and Sarah H. Purdy. Nine acres were owned by Mary J. Debevoise. The defendant was the attorney for Solomon D. Purdy, but for none of the other owners. On July 6, 1905, he employed the plaintiff to sell the fifteen acres. He wrote that his client was the owner, and that the price was $7,000 an acre; and he urged the submission of an offer. In another let-

ter he stated that the nine acres were owned by Mrs. Debevoise; that "her property, however, being on the Fresh Pond Road," was "the least valuable;" and he added, "owing to its location I do not think it necessary to procure this property in order to make a successful sale of the balance." A few days later, the plaintiff announced that he had a customer who was willing to buy the fifteen acres for $5,000 an acre. His letter ends with this reference to the nine-acre parcel: "I might also be able to sell the other portion on Elm Avenue up to Fresh Pond Road. You might in the meantime communicate with that owner and let me know the lowest cash figure." The defendant rejected the offer of $5,000 an acre; and the plaintiff set to work to procure a better price. He wrote on July 18 that it might be possible to get $5,500 if part payment could be made by a purchase-money mortgage. To this the defendant replied on July 20 that such a price would not be adequate. "After consultation," he said, "the parties owning the entire strip to Fresh Pond Road have agreed that they will sell for $6,500 per acre." "The entire strip to Fresh Pond Road" included the nine-acre parcel. The letter went on to urge that the purchaser should increase the offer already made. The plaintiff, answering this letter, expressed his belief that by taking the whole strip "the price per acre would be a great deal more than leaving the upper portion out;" he then stated that he was in a position to make a firm offer of $5,500 per acre for the fifteen acres, and concluded: "Later on I might be able to sell the upper portion to another party." Receiving no word from the defendant, he wrote again on August 3 and renewed the offer, confining it expressly to the fifteen acres. The defendant made no complaint that the offer should include the other parcel, but was still dissatisfied with the price. On August 9 he wrote: "I think you have overlooked the fact that I wrote you some time since that the price fixed by the heirs was $6,500 per acre, but to submit

any offer that you received." After this letter nothing happened for a month. On September 9 the plaintiff wrote: "I have another party now in view with the intention of purchasing the fifteen acres. I thought I would write to you and see whether the terms are the same as before," and to this the defendant replied in substance that the terms remained the same, and that he would be glad to have an offer. A few weeks later a new offer came. On September 25 the plaintiff wrote that he had found a purchaser who would pay $6,000 per acre. He added: "By purchasing these fifteen acres it might be possible that I will dispose of the balance of the property to Fresh Pond Road." The defendant says that when this offer came to him he wrote that the owners had already rejected an offer of $6,500 from some one else, and that the price would have to be advanced considerably. The plaintiff denies that such a letter was received. A few days later he called with the proposed purchaser, one Roth, at the defendant's office. There is a conflict between the testimony of the plaintiff and that of the defendant in respect of the ensuing interview. We state the plaintiff's version. He said that Mr. Roth was willing to pay $6,500 per acre. Mr. Roth was introduced and confirmed the offer. The defendant then refused to sell the fifteen acres for $6,500 an acre, which would amount to $97,500. He insisted on $100,000. He said: "You make it $100,000 and I will sign contract for that property now." This the proposed purchaser refused to do. The defendant suggested that the matter go over for a few days and he would have his client sign a contract. Later he wrote that the price had been increased to $10,000 an acre. With that the plaintiff abandoned the effort to bring about a sale. He sued the owners of the fifteen acres for his commissions. Represented by the defendant as their attorney, they defended the action and denied that they had ever authorized the defendant to find a purchaser for their land. They thus escaped

liability. The plaintiff then brought this action against the agent. He had a verdict in his favor at the Trial Term. The Appellate Division held that the defendant's letter of July 20 gave notice to the plaintiff that he was to sell the entire tract of twenty-five acres, and that in procuring a purchaser for the fifteen acres, though at the prescribed price, he had not fulfilled his contract. The judgment was, therefore, reversed, and the complaint dismissed.

*Robert H. Wilson* for appellant. The construction to be placed upon the correspondence between the plaintiff and the defendant was a mixed question of law and fact and was properly submitted to the jury. (*White* v. *Hoyt,* 73 N. Y. 505; *Stanton* v. *Erie Railroad Co.,* 131 App. Div. 879; 199 N. Y. 529; *Nellis* v. *Western Life Ind. Co.,* 207 N. Y. 320; *Camp* v. *Treanor,* 143 N. Y. 649; *Stokes* v. *Mackay,* 140 N. Y. 640; *Kenyon* v. *Knights Templar Assn.,* 122 N. Y. 247; *Trustees of East Hampton* v. *Vail,* 155 N. Y. 463; *Stevens* v. *Amsinck,* 149 App. Div. 220; *First National Bank* v. *Dana,* 79 N. Y. 108.) The plaintiff had a perfect right to believe that the price of $6,500 per acre placed upon the property by the defendant referred to the "fifteen-acre" plot. (*White* v. *Hoyt,* 73 N. Y. 500; *Nellis* v. *Western Life Ind. Co.,* 207 N. Y. 320; *Stevens* v. *Amsinck,* 149 App. Div. 220; *Stanton* v. *Erie R. R. Co.,* 131 App. Div. 879; 199 N. Y. 520.)

*Nathan P. Bushnell, Jacob Brenner* and *Robert McCord* for respondent. The defendant had an absolute right to revoke any authority of the plaintiff at any time before the latter had found a *bona fide* purchaser ready and willing to purchase. (*Van Siclen* v. *Herbst,* 30 App. Div. 255; *Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378; *O'Hara* v. *Murray,* 109 N. Y. Supp. 1011.) In no event could the plaintiff recover in this action, because

from his own case it appears that he never found a purchaser ready and willing to comply with the alleged contract of employment. (Rapalje on Real Estate Brokers, 157.) The testimony being without substantial contradiction that the letter of revocation was actually dictated, typewritten and mailed, a legal presumption of its receipt was created by such evidence. (*Oregon S. S. Co.* v. *Otis,* 100 N. Y. 446; *Williamson* v. *Seely,* 22 App. Div. 393; *McArdle* v. *Thames Iron Works,* 96 App. Div. 142.)

CARDOZO, J. We are unable to concur with the Appellate Division in its construction of the terms of the plaintiff's employment. We think he earned his commission when he procured a purchaser who was willing and able to buy the fifteen acres at the price named by the defendant. There is no doubt that when the contract of employment was first made it had relation to that parcel, and to no other. The argument is, however, that by force of the letter of July 20, the contract was changed. The change is said to have resulted from the statement that "after consultation, the parties owning the entire strip to Fresh Pond Road have agreed that they will sell for $6,500 per acre." This was merely a statement that a uniform price had been established for the entire tract. It did not cancel the plaintiff's authority to sell the fifteen acres, which were owned by the defendant's client. It did not modify the authority by requiring the sale at the same time of the nine-acre parcel, in which the defendant's client had no interest. The letter goes on to invite the purchaser to raise his offer of $5,000 an acre, but nowhere conveys the suggestion that he must buy additional land. The defendant had already told the plaintiff that he had no interest in the adjoining parcel, but the plaintiff had requested him to ascertain the lowest price that its owner would accept. In these circumstances we cannot say that, as a matter of law, the plaintiff should have understood this letter as a revocation of the authority which

the defendant, at the outset of their dealings, had distinctly conferred. The most that can be said for the defendant is that its meaning is ambiguous, and that its construction was for the jury (*White* v. *Hoyt,* 73 N. Y. 505).

. The events that followed strengthen the conclusion that the letter of July 20 did not change the subject-matter of the sale. The plaintiff continues to submit offers, expressly limited to the fifteen acres. The defendant, in rejecting them, reminds the plaintiff that the price is $6,500 per acre, but at no time suggests that the offer should extend to other land. After some weeks of inaction, the plaintiff writes that another purchaser of the fifteen acres is in view, and inquires as a matter of precaution whether the terms are the same. The defendant replies that the terms have not been changed, and urges the submission of an offer. Knowing that the proposal is to buy fifteen acres and no more, the defendant does not dissent, but encourages the broker's efforts. In all this, we may find some evidence at least of the meaning of the letter of July 20 as interpreted by its author. But the final evidence of plaintiff's authority may be found in the final interview between the plaintiff and the defendant. There was no suggestion even then that the offer should include other lands. On the contrary, the one objection urged by the defendant had to do with the price. He was dissatisfied with $6,500 an acre, the price which he had named. He was ready to close the transaction then and there for $100,000. Later he reported that $10,000 an acre would be demanded. The purchaser was not rejected because the offer was confined to the fifteen acres. There was never a hint that it ought to be extended to anything else. The purchaser was rejected, if the plaintiff's testimony is true, because the defendant changed his mind and became dissatisfied with the price.

The point is made that the plaintiff's authority to sell the land for $6,500 an acre was terminated when he

reported a lower offer. We are referred to cases which hold that, in order to establish a contract, an offer must be accepted as made, and that a counter offer is a rejection. But plainly those cases have no pertinency here. The defendant made no offer to sell the land to the plaintiff. What he offered to do was to employ the plaintiff as a broker, and that offer was accepted and the contract of employment became complete when the plaintiff undertook to act as broker, and to use his best efforts to find a buyer. He did not put an end to his employment by reporting offers lower than the price named by the defendant. Indeed, he had been expressly directed by the defendant to submit all offers that came to him. The agency might, of course, be expressly revoked; but unless so revoked, it continued for a reasonable time. As late as September 9 the plaintiff was informed by the defendant that the terms of sale were unchanged.

We think, therefore, that the Appellate Division erred in dismissing this complaint. There remain, however, questions of fact which, if answered by the Appellate Division favorably to the defendant, would require a new trial. There is the question, for example, whether the plaintiff received the defendant's letter of September 26 to the effect that an offer of $6,500 an acre would no longer be accepted. The plaintiff denies that he received it, but the defendant insists that there are circumstances which discredit the denial. These questions are not within our jurisdiction, and we express no opinion upon them.

The judgment should be reversed, with costs, and the case remitted to the Appellate Division to the end that the question whether the verdict is in accordance with the weight of evidence may be considered by that court (*Junkermann* v. *Tilyou Realty Co.*, 213 N. Y. 404; *Galley* v. *Brennan*, 216 N. Y. 118).

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, CUDDEBACK, SEABURY and POUND, JJ., concur.

Judgment reversed, etc.