GERTRUDE Q. ERLICH, Individually and as Executrix of HENRY ERLICH, Deceased, Plaintiff, *v.* MAX I. LANDMAN, Defendant.*

Supreme Court, Steuben County, March 20, 1943.

* Affd. 266 App. Div. 900.

*W. Earle Costello* for plaintiff.

*John W. Hollis* for defendant.

CRIBB, J. This is an action brought by plaintiff to recover the rental of business premises in the city of Hornell for the month of May, 1942. Liability of the defendant tenant depends upon the interpretation to be given to an amendment to the lease.

In 1936 the plaintiff, Gertrude Q. Erlich, and the defendant, Max I. Landman, had executed a written lease whereby the defendant leased from the plaintiff a valuable store for a period of five years at a monthly rental of $300. It appears that the defendant established a clothing business in this store with or for his son, Maxwell Landman, then a minor, who actively engaged in the operation of the business. The lease contained an automatic renewal clause providing that at the end of the five-year period the lease would automatically renew for a further period of five years unless the lessee, the defendant in this case, should notify the lessor, personally or by registered mail, at least ninety days before the expiration date, of his election not to renew the lease. The expiration date of this lease was January 31, 1941.

Some time in June, 1940, the defendant conferred on several occasions with the then attorney for the plaintiff concerning the possibility of his son, Maxwell Landman, being " compelled " to go into the armed service and stated that he wanted to have some sort of provision made whereby he could terminate his lease with the plaintiff in that event. In September, 1940, plaintiff's attorney prepared a supplemental agreement or amendment to the said lease which read as follows: " In con-

sideration of the renewal of the Lease covering property at 134–136 Main Street, Hornell, N. Y., for a term of five years commencing at noon on the 31st day of January, 1941, and ending at noon on the 31st day of January, 1946, that in the event that your son Maxwell Landman is drafted by the United States Army at any time from noon on January 31, 1941, to noon on January 31, 1942, you may at your option cancel and terminate the said lease by giving Gertrude Q. Erlich either personally or by registered mail addressed to her at Hornell, N. Y., written notice of your intention to terminate and cancel. Otherwise the lease is to remain in full force and effect during said renewal term according to the terms thereof.''

Plaintiff, and defendant after consulting his attorney, accepted this amendment and consented that it be incorporated in and made a part of the lease.

On January 16, 1942, the defendant served on the plaintiff a notice of cancellation which read as follows: '' Please take notice that I hereby elect to cancel the lease on the building located at the corner of Church and Main Streets in the City of Hornell, New York, which lease is dated March 4, 1936, in accordance with the letter signed by G. Orcutt Brown, dated September 16th, 1940, and that I will surrender possession of said building to you on the 1st day of May 1942. Further take notice that this lease is cancelled in accordance with the agreement made at the time such lease was renewed, as stated in letter of G. Orcutt Brown, dated September 16, 1940, and that the reason for such cancellation is that Maxwell Landman has been drafted within the terms and conditions of said letter and prior to January 31, 1941. Dated Hornell, N. Y., January 16, 1942.''

(Signed) '' Max I. Landman.''

It appears that in September, 1940, the son, Maxwell Landman, registered under the Selective Training and Service Act of 1940 and received a Class I rating. Later in that month he applied for deferment to enable him to look after his business affairs and his rating was changed from Class I to Class II-A, and a deferment was granted him until March 19, 1942. In December, 1941, he was called for a physical examination, found fit for service, and his rating was changed to Class I with his deferment still continued to March 19, 1942. On January 19, 1942, he went to Washington, D. C., and consulted with an officer of the War Department relative to his eventual entry into the service. On February 17, 1942, he went before his local draft board and filed the follow-

ing application: " I hereby apply for immediate classification for the purpose of securing form DSS Form 190 to be presented to the recruiting service of the armed forces. I waive all rights of notice, personal appearance and appeal, and request that my classification be completed as soon as possible. My service number is 1649, and my order number is 1592." On February 19, 1942, he went to Richmond, Virginia, and interviewed what he termed in his testimony the " Selective Service Office " and volunteered his services to the Army. From there he was sent to an induction center at Camp Lee, Virginia, and a few days later was assigned to the Quartermaster Corps at Camp Lee.

It is the contention of plaintiff that Maxwell Landman was not drafted into the armed forces within the time specified by the amendment to the lease, that is, between noon January 31, 1941, and noon January 31, 1942, and that the service of the notice of the cancellation of the lease followed by the continued occupation of the leased premises during the months of February, March and April did not constitute a termination of the lease within the intent of the parties as expressed in the amendment to the lease. Plaintiff asserts that the mere *classification* of the young man, together with the said deferment for a stated period by his local draft board, did not make him a member of the armed forces and that he actually became a member thereof by voluntary enlistment after the expiration of the period as defined by the lease amendment, within which the " drafting " of the young man must have occurred if the defendant were to have the right to terminate the lease.

There was submitted to the jury the question as to whether Maxwell Landman's induction into the armed forces in the manner and at the time as revealed by the credible evidence, was the result of being drafted within the intent of the parties as expressed by the lease amendment. The jury was instructed that if they found that such induction was in conformity with the intent of the parties, then the defendant had the right to terminate the lease in the manner provided by the lease amendment. The court further charged the jury that if they found that the defendant did have the right to terminate the lease, they must then determine whether the notice of cancellation of the lease as served upon the plaintiff by the defendant, followed by occupation of the premises for three more months after the service of the notice, constituted a cancellation and termination of the lease as contemplated by the parties when they signed the lease amendment.

It appears that the jury could have found a verdict in favor of the plaintiff upon the ground that Maxwell Landman was not " drafted " into the service in the manner or within the time contemplated by the parties, or, upon the ground that, even though they found he was drafted at the time and in the manner contemplated by the parties, the defendant failed to end and terminate the lease within the intent of the parties as expressed by the lease amendment when he elected to remain in possession of the leased premises for a further period of three months ending May 1, 1942.

The defendant vacated the premises on or before the 1st day of May, 1942, and paid the rent up to that date. The plaintiff brought this action to recover rent for the month of May, 1942.

Prior to the trial plaintiff moved under rule 113 of the Rules of Civil Practice for summary judgment and to strike out the answer of the defendant. This motion was denied August 17, 1942, by Mr. Justice GILBERT who held, in a memorandum of decision, that whether or not defendant's son was " drafted by the United States Army " within the period specified in the amendment to the lease was a question of fact to be tried by a jury. Mr. Justice GILBERT also held that whether or not the notice of termination given was within the intent of the parties by the language used in the amendment was a question of fact for a jury and not one for the court.

Since Mr. Justice GILBERT's decision and on September 28, 1942, the case came on for trial before this court at Hornell, New York, and the jury, by a vote of ten to two, returned a verdict in favor of plaintiff in the amount of $300. At the trial decision was reserved on the following three motions: 1. Motion by defendant made at the close of proofs for a nonsuit and dismissal of plaintiff's complaint. 2. Motion by plaintiff for a directed verdict. 3. Motion by defendant made upon the coming in of the jury to set aside the verdict and for a dismissal of the complaint under section 549 of the Civil Practice Act.

The jury having found a verdict for the plaintiff, the plaintiff's motion for the direction of a verdict may be disregarded.

The defendant takes the position that there were no facts in the case which should have been submitted to the jury. It is interesting to note that he must have taken quite the contrary position when he successfully opposed before Mr. Justice GILBERT plaintiff's motion for summary judgment. There are several facts to be considered in determining the question here presented: The language of the agreement of September 16,

1940; the fact that both the defendant and Mr. Brown, who was acting for Mrs. Erlich, agreed that the defendant expressed a fear that Maxwell might be '' compelled '' to go into the army; the fact that a specified time limit was fixed whereby the option to cancel would only become operative in case the son was drafted during such period of time; the fact that defendant must have known at the very time he accepted the amendment that there could be no doubt that his son would be required to register and be prospectively eligible for service; and the fact that he, the defendant, submitted the proposed amendatory clause to his own attorney before accepting and signing it.

The son, Maxwell Landman, became of age soon after the execution of the lease in 1936. The defendant could easily have terminated the lease under the original ninety-day clause and left it for his son, then of age, to make such arrangements with the plaintiff lessor as he might desire. Instead, the defendant executed the supplemental agreement *limiting to one year* the period within which the ''drafting'' of the son would operate to create a right of cancellation to the defendant. Why was the time limited to one year? Did defendant then have in mind that during this period he might find another person to take over the store or, failing in that, he could then terminate the lease? What did the parties intend by the word ''drafted''? The plaintiff holds that it meant the actual mustering of the son by compulsion into some branch of the armed forces—not the possibility of it happening in the future. The defendant maintains that it was the intention of the parties that ''drafted by the United States Army'' meant his selection and classification by a civilian body as one eligible for service. He submits Webster's definition of the word ''draft,'' i. e., ''A selecting or detaching of men from the people at large or any part of them for compulsory service as soldiers or sailors.'' (Webster's New International Dictionary [2d ed.].) Plaintiff submits that if the literal meanings of the words are to be adhered to, then the defendant is bound by the words '' United States Army,'' for he submitted proof that there are two armies, viz., the '' United States Army '' and the ''Army of the United States,'' and that all selectees under the present Selective Service Act are inducted into the Army of the United States, and not the '' United States Army.'' It may well be argued that in the common speech of people when it is said that a man '' was drafted '' in a war, it carries the conviction that he was in actual service — not merely selected as one who might have had to go into service upon the happening of some contingency.

For these and other reasons it seems the supplemental agreement was ambiguous and a question of fact was presented for determination by the jury. That the question of intent is one of fact, not of law, is a rule which has been consistently followed by the courts. In *Bird* v. *St. Paul F. & M. Ins. Co.* (224 N. Y. 47) the court said: "Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts." Again, in *Martin* v. *Crumb* (216 N. Y. 500) the court said: "In these circumstances we cannot say that, as a matter of law, the plaintiff should have understood this letter as a revocation of the authority which the defendant, at the outset of their dealings, had distinctly conferred. The most that can be said for the defendant is that its meaning is ambiguous, and that its construction was for the jury (*White* v. *Hoyt*, 73 N. Y. 505)." (See, also, *O'Neil Supply Co.* v. *Petroleum H. & P. Co.*, 280 N. Y. 50, 56.)

The rule seems so well established as to require no further reference to cases in its support.

The defendant's contention that, under the Soldiers' and Sailors' Civil Relief Act of 1940, as amended in 1942 (U. S. Code, tit. 50, Appendix, § 501 *et seq.*), he, having made the lease in behalf of his son, was entitled as a matter of law to cancel the lease when the son entered the service, is without merit. The original lease was not executed by the son who entered the service, but by the defendant individually and not in any representative capacity. We do not find that the Soldiers' and Sailors' Civil Relief Act affords any relief to the defendant under the circumstances obtaining in this case.

The defendant complains that the jury was permitted to pass upon the question of the intent of the contracting parties, and that in the event they should find the son, Maxwell Landman, had been drafted within the terms of the supplemental agreement, there still remained for their consideration the question as to whether the notice of cancellation, providing for a continued occupation of the premises until May 1st, was sufficient to terminate the lease. Defendant contends that if the son "had been drafted within the meaning of the supplemental agreement," there could be no question as to defendant's right to cancel the lease at any time after January 31, 1942, and cites *Colonial Operating Corp.* v. *Hannan Sales & Service* (178 Misc. 885) and *Schantz* v. *American Auto Supply Co., Inc.* (178 Misc. 909) (the only cases cited in his brief of nineteen pages) in

support thereof. Again, this position might be well taken if the lease had been executed by the son, Maxwell Landman, rather than by the father, the defendant herein.

It appears that the phraseology of the supplemental agreement was ambiguous, and that there was properly submitted to the jury all the facts and circumstances surrounding its execution and the subsequent acts of the parties, for the purpose of determining their true intent.

The motions by defendant for a nonsuit and dismissal of the complaint and for setting aside the verdict are denied. Let an order enter accordingly.