WILLIAMSON, PICKET, GROSS, INC., Appellant, v ABRAHAM HIRSCHFELD et al., Respondents.

First Department, March 17, 1983

**APPEARANCES OF COUNSEL**

*Elaine Platt* for appellant.

*Harry Grossman* for respondents.

SULLIVAN, J. P.

In this action to recover a real estate brokerage commission and punitive damages the issue is the sufficiency of the complaint, against which defendants have moved for dismissal on the ground, *inter alia,* of a defense founded on documentary evidence (CPLR 3211, subd [a], par 1). Since it is clear from such evidence that the individual defendants, Abraham and Elie Hirschfeld, never obligated themselves in their personal capacities, the complaint against them was properly dismissed. As for the corporate defendant, Vertical Club Corp., however, a different picture is presented.

Initially, we note that Vertical Club relies, at least in part, upon an affidavit as a primary source of proof of its defense founded on documentary evidence. To the extent the affidavit is so used we must ignore it since an affidavit does not qualify as "documentary evidence" which will support a motion to dismiss under CPLR 3211 (subd [a], par 1). In any event the affidavit contains scant factual content and only highlights the existence of a factual issue sufficient to deny the relief sought by Vertical Club. We similarly reject plaintiff's detailed factual account of the underlying transaction since it appears in the affirmation of its attorney, who manifestly lacks personal knowledge of the facts. Significantly absent is the affidavit of Augie Hasho, who represented plaintiff in all the negotiations underlying this action. The following account is therefore based solely upon the averments of the complaint, deemed to be true on a motion to dismiss (*Hart v City of Glens Falls,* 8 AD2d 654), and the documents submitted, to which our consideration of the matter is limited.

On August 21, 1980 plaintiff Williamson, Picket, Gross, Inc., a real estate broker, wrote to Abraham Hirschfeld, listed in the Blue Book, a real estate guide, as the owner of the building at 325 East 60th Street, New York City, in behalf of the New York Telephone Company, which was anxious to rent space at these premises. Subsequently, plaintiff was to learn that Vertical Club was the owner of the property, and that Hirschfeld was its president and sole stockholder. In any event, plaintiff made an initial offer to

rent 4,400 square feet at $14 per square foot for 15 years. Hirschfeld demanded $17 per square foot for the space for a 10-year term. Plaintiff made several subsequent written proposals, increasing its client's offer each time, but Hirschfeld remained adamant. Finally, according to plaintiff, on September 30, 1980, oral agreement was reached to rent 4,800 square feet of the westerly portion of the ground floor at $17 per square foot for five years, with a four-month rent concession. On the same day plaintiff wrote Hirschfeld to confirm the agreement and to suggest that leases be prepared immediately for its client's review. This letter differed from its predecessors in that all of the terms set forth appeared under the heading "As Agreed To". Hirschfeld initialed this letter, which concluded with the sentence, "[a] commission will be paid to Williamson, Picket, Gross, Inc., rates attached hereto." These rates were set forth in a separate proposed letter agreement of the same date addressed to Hirschfeld stating that the commission was "[d]ue upon agreement", to which Hirschfeld added the caveat, "[p]rovided tenant has signed lease for the space." At the bottom of the proposed agreement under the legend "Accepted and Agreed To", Hirschfeld signed as "Pres. Vertical Club Corp."

Plaintiff thereafter sent two copies of Hirschfeld's lease, a "Standard Form of Store Lease" and rider, to the telephone company with the request that its attorneys "make the necessary changes." On October 7, 1980 plaintiff sent Hirschfeld an unsigned copy of the lease with the telephone company's modifications to which, allegedly, Hirschfeld had already orally agreed, and which included elimination of the provisions calling for the payment of security and requiring the lessee to maintain general public liability insurance in favor of itself and the landlord, a lease commencement date of October 15, instead of November 1; 1980, as well as other minor substantive changes. It should be noted that plaintiff's earlier written proposals of September 8 and 25, 1980, as well as its September 30, 1980 letter agreeing to Hirschfeld's terms, had stated that the telephone company was self-insured. Upon receipt of the unsigned lease, according to plaintiff, Elie Hirschfeld, Abraham's son and business associate,

called to ask why the lease had not been signed. When Hasho explained that the telephone company representative whose signature was required was away on vacation and would not return for a few days, Elie Hirschfeld allegedly cautioned him, "we have other people looking too, and if [the telephone company doesn't] hurry up and sign, I'll give this to them." At this time, plaintiff alleges, Elie Hirschfeld approved the telephone company's changes in the lease.

On October 16, 1980, after having advised Hirschfeld that it had been signed, plaintiff delivered the lease, executed in duplicate with the changes intact, to Hirschfeld. When Hasho telephoned to inquire when the telephone company could have occupancy, Elie Hirschfeld told him, "Augie, we have a problem. I have a client who might want the whole building. If so, New York Telephone can't have the space. I'll know for sure next Tuesday." On October 20 Hasho telephoned to demand payment of the commission. Hirschfeld refused, stating, "you get no commission because we have no deal." The next day plaintiff delivered its statement of account for the lease commission to Hirschfeld who, that same day, advised plaintiff by letter that he was rejecting the lease because the "[c]hanges made * * * by the [telephone company] were made without my agreement or consent and are totally unacceptable to me." According to plaintiff, this was the first indication of any objection to any of the telephone company's changes in the lease. Parenthetically, it should be noted, except for Hirschfeld's initials which appear on the September 30, 1980 letter, and his signed acceptance of the terms of the September 30, 1980 commission agreement, as modified, this letter represents the sole piece of documentation ascribable to the Hirschfelds or Vertical Club and it is the only document which evidences their side of the dispute as to whether agreement was reached. Three days later, on October 24, 1980, an article appeared in the *Daily News* reporting that Hirschfeld had entered into a 20-year lease of the entire building for $40,000,000. Plaintiff thereafter commenced this action, naming both Hirschfelds and Vertical Club as defendants.

After granting reargument because it had overlooked that the telephone company had, in fact, signed the lease, Special Term adhered to its earlier determination dismissing the complaint against Vertical Club. On reargument it found that, notwithstanding such fact, plaintiff was not entitled to any commission since, as a matter of law, the telephone company and Hirschfeld had never reached agreement on the terms of a lease, as was required by the brokerage agreement. We disagree. Instead of resolving the issue of whether agreement had been reached on the essential terms of a lease, the documentary evidence only demonstrates the existence of questions of fact.

Ordinarily, "a contract between the [parties] need not be fully executed or consummated for a broker to earn his commissions". (*Penzotti v Broda Mach. Co.,* 37 AD2d 340, 342, affd 33 NY2d 815, citing *Lane-Real Estate Dept. Store v Lawlet Corp.,* 28 NY2d 36.) Rather, a broker earns his commission when he brings his principal and a third party together and their minds meet on the essential terms of an agreement (*Kaelin v Warner,* 27 NY2d 352, 355-356; *Galbreath-Ruffin Corp. v 40th & 3rd Corp.,* 19 NY2d 354), or at least produces a party ready, willing, and able to accept the terms offered by the principal (*Lane-Real Estate Dept. Store v Lawlet Corp.,* 28 NY2d 36, *supra; Hecht v Meller,* 23 NY2d 301). As long as the parties have agreed upon the essential terms the commission is earned, even if every term and condition which might appear later in the written contract has not been settled. (*Mengel v Lawrence,* 276 App Div 180.)

Of course, a broker and his principal may depart from the general rule and by agreement require the broker to procure a binding written contract or lease from the party he has produced before he is entitled to commissions. (*Heller & Henretig v 3620-168th St.,* 302 NY 326; see, also, *Wagner v Derecktor,* 280 App Div 661, revd on other grounds 306 NY 386.) Such is the case here. Hirschfeld, by adding the further condition, "[p]rovided tenant has signed lease" modified the proposed brokerage agreement, which had followed the general rule in providing that commission was due only "upon agreement". That this became the condition of employment is beyond dispute since plaintiff's

president, by initialling the addition and returning a conformed copy of the agreement to Hirschfeld, readily agreed to the counteroffer.

The complaint alleges that plaintiff, representing the telephone company, and Hirschfeld, acting for Vertical Club, orally agreed to the essential terms of a lease, a summary of which plaintiff set forth in its September 30, 1980 letter. The documentary evidence is consistent with that allegation. What it suggests is an ongoing negotiation between plaintiff and Hirschfeld over two essential terms, the amount of the rent and the length of the lease. After making a series of offers which were rejected, the telephone company, as reflected by plaintiff's September 30 letter, finally met Hirschfeld's demands. By initialling this letter, Hirschfeld seemingly signified his agreement. Consistent with such a development plaintiff forwarded a proposed written commission agreement, which Hirschfeld, on Vertical Club's behalf, accepted. A lease, encompassing the very terms stated in the September 30 letter, was prepared and sent to the telephone company. This much stands unrefuted.

While a commission would have been earned at this point in the conventional brokerage relationship, the brokerage agreement, as modified, provided that commission was due only when the telephone company signed a lease. Concededly, it did sign a lease. But whether the signed lease with its changes mirrors the agreement reached, as plaintiff contends, or is an unauthorized departure from the oral agreement as to material terms, as Vertical Club contends, presents an issue of fact which clearly is not resolved by the documentary evidence. In arguing that it should prevail on this issue as a matter of law plaintiff invokes the rule that absent a stipulation to the contrary, when a broker produces a party ready, willing and able to accept the essential terms fixed by his principal, his right to commission will not be defeated merely because all of the legal and other contractual details customarily worked out between the attorneys have not been resolved. (See *Mengel v Lawrence,* 276 App Div 180, *supra.*) Clearly if the broker has satisfied the condition of his employment, he has earned his commission, notwithstanding the princi-

pal's refusal to enter into a contract with the other party (*Martin v Crumb,* 216 NY 500; *Suydam v Healy,* 93 App Div 396; *Brown v Grassman,* 53 App Div 640) or his refusal to complete the transaction. (*Goodman v Marcol, Inc.,* 261 NY 188.) But the condition of plaintiff's employment was that a commission would not be earned until agreement had been reached and the tenant had bound itself to a lease. Only resolution of the issue whether the telephone company's changes had been agreed upon, as plaintiff contends, or were even material, will determine Vertical Club's liability. Any conflict on these issues is a matter for resolution at trial, not on a motion addressed to the sufficiency of a complaint.

██ Vertical Club also moved to strike that portion of the complaint seeking punitive damages. Since plaintiff's claim for punitive damages is incorporated into its single cause of action the proscription against pleading a separate cause of action for such damages (*Kelly v CBS, Inc.,* 59 AD2d 686) is not violated. Whether a sufficient factual basis is presented to warrant such an award is an issue which cannot be determined on this record. If the offending conduct merely constitutes breach of contract plaintiff will be adequately compensated by an award of damages. On the other hand, if Vertical Club's actions involve that degree of bad faith evincing a "disingenuous or dishonest failure to carry out a contract" (*Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427, 437) punitive damages may be awarded. Suffice to say, "punitive damages are not available for mere breach of contract, for in such a case only a private wrong, and not a public right, is involved" (*Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 358).

██ Finally, we note that the original action was commenced by service of a Civil Court summons and a complaint which captioned the matter as a Supreme Court action. Within 20 days defendants moved in the Supreme Court, New York County, to dismiss the complaint on the grounds already discussed, as well as on the ground that the court, by virtue of the defective summons, lacked personal jurisdiction over defendants. Although never reached by Special Term, this argument is meritless. As evidenced by the promptness with which they moved in the

proper forum, defendants were afforded adequate notice of the court in which the action was pending. Nor were they in any way prejudiced. The time in which they were to appear and to answer was the same. (CCA, § 402, subd [a]; CPLR 320, subd [a].) In such circumstances we find the defect to be insubstantial, and the summons is deemed amended. (CPLR 2001.)

Because of the pendency of the jurisdictional attack against the first complaint plaintiff instituted a second action by the service of the identical complaint with a proper summons. Inasmuch as the complaint in the original action was being dismissed, the court similarly dismissed the complaint in the second action without reaching the technical objection that another action for the same cause was pending (CPLR 3211, subd [a], par 4). Since we are reinstating the complaint against Vertical Club, the proper basis for the dismissal of the complaint in the second action is the pendency of another action for the same cause.

Accordingly, the judgment bearing Index No. 3581/81, Supreme Court, New York County (SINCLAIR, J.), entered October 22, 1981, dismissing the complaint, should be modified, on the law, without costs or disbursements, to the extent of denying defendant Vertical Club Corp.'s motion to both dismiss the complaint and to strike that portion of the complaint which seeks punitive damages and, except as thus modified, affirmed. The judgment of the same court, entered the same date, bearing Index No. 5385/81, dismissing the complaint should be affirmed without costs or disbursements.

CARRO, ASCH, BLOOM and MILONAS, JJ., concur.

Judgment, Supreme Court, New York County, entered on October 22, 1981, bearing Index No. 3581/81, unanimously modified, on the law, without costs and without disbursements, to the extent of denying defendant Vertical Club Corp.'s motion to both dismiss the complaint and to strike that portion of the complaint which seeks punitive damages and, except as thus modified, affirmed. The judgment of said court, bearing Index No. 5385/81, entered on

October 22, 1981, unanimously affirmed, without costs and without disbursements.