David **MILLER**, on behalf of himself and all others similarly situated, Plaintiffs,

v.

**EUROPEAN AMERICAN BANK and Malcolm A. Hall, Defendants.**

**No. 95 Civ. 8010 (RWS).**

United States District Court, S.D. New York.

April 15, 1996.

Robert B. Silver & Associates, New York City (Robert B. Silver, of counsel), Boies & Boies, San Diego, CA, for Plaintiffs.

Hall Dickler Kent Friedman & Wood, New York City (James E. Daniels, Jeffrey M. Tamarin, of counsel), for Defendants.

SWEET, District Judge.

Plaintiff David Miller ("Miller") brought this class action alleging, *inter alia,* that Defendants, European American Bank ("EAB") and Malcolm A. Hall ("Hall"), had made fraudulent and misleading mass mailing offers to him and to members of the general public, inducing him to sign up for and use EAB–issued credit cards, in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and Regulation Z promulgated thereunder, 12 C.F.R. § 226 *et seq.,* and in violation of state law. Defendants have moved to dismiss Miller's TILA claim pursuant to Federal Rule of Civil Procedure 56 on the grounds that it is time-barred, or in the alternative, pursuant to Rule 12(b)(6), Fed. R.Civ.P., on the grounds that Miller has failed to state a claim upon which relief could be granted. Defendants have also moved pursuant to 12(b)(1), Fed.R.Civ.P., to dismiss for lack of subject matter jurisdiction over the state claims.

For the reasons herein stated, the motion to dismiss with respect to the federal claim for failure to state a claim is granted. The motion to dismiss for lack of subject matter jurisdiction with respect to the state claims is also granted.

### The Parties

Plaintiff Miller is a resident of Missouri.

Defendant EAB is a chartered bank with its headquarters and principal place of business in Uniondale, New York.

Defendant Hall resides in Missouri and was the Vice President for Consumer Credit Product Development at EAB.

### Prior Proceedings

Miller filed his Complaint in this action on September 20, 1995, and an Amended Complaint on November 20, 1995. On January 17, 1996, EAB and Hall filed their notice of motion. Oral argument was waived by stipulation of the parties, and the matter was deemed fully submitted on March 20, 1996.

### Facts

Beginning as early as March 1994, EAB and Hall undertook a mass mailing to hundreds of thousands of members of the public, including Miller, soliciting the use of "preapproved" EAB Visa and MasterCards. As an inducement to enrollment, EAB offered all those who signed up for the EAB credit card a Certificate for a free TWA air ticket (the "EAB Offer"). The EAB Offer stated in bold face type:

> Send for your TWA MasterCard today and receive a FREE ROUND–TRIP COMPANION TICKET. Use this certificate to take someone with you, free, with the purchase of a first class, business class, or comfort class fare (excluding Cairo and Tel Aviv; offer good until March 31, 1995).

The Offer contained no other restrictions and did not indicate that any would apply to the use of the Companion Ticket.

In reliance on the Offer, Miller applied for, received and used the EAB credit card. After his application was processed, Miller received a Certificate. However, in addition to the restrictions mentioned in the EAB Offer, there were also additional restrictions placed on the Certificate's use. The Certificate con-

tained the following restrictions as to travel dates:

> Blackout dates: Domestic—November 23, 27 and 28, 1994; December 15, 1994 through January 8, 1995. International— No travel permitted July and August; December 15, 1994 through January 8, 1995.

The companion ticket also contained the following additional restrictions:

> 1) Purchase of the TWA ticket must be made with EAB/TWA Visa or MasterCard credit card.

> 2) All travel must be on flights operated by TWA or Trans World Express. Travel is not permitted on TWA designated flights operated by another carrier.

> 3) Companion Certificate has no cash value and may not be combined with any other certificate, coupon, bonus, promotional fare. Frequent Flight Bonus award ticket or other promotional offer.

In addition, the certificate restricted its use to those persons travelling with "full fare" passengers.

Since Miller had purchased a discounted round-trip ticket to France, he was unable to use the Companion Certificate because of the "full fare" restriction. As a result, Miller was unable to take a companion with him to France in July, greatly diminishing, he alleges, the value of the Companion Certificate as represented in the offer.

### Discussion

### I. Rule 12(b)(6) Standards

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court presumes the factual allegations of the complaint to be true and draws all factual inferences in the plaintiff's favor and against the defendant. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan*, 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations set forth and considered herein are taken from Miller's Amended Complaint and do not constitute findings of fact by the Court. In determining the sufficiency of the Amended Complaint, consideration is limited

to its factual allegations. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994).

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### II. The Motion to Dismiss the TILA Claim Will Be Granted

█ · The mandatory disclosure requirements for open-end consumer credit plans are governed by TILA and enumerated in 15 U.S.C. § 1637(a). They include, *inter alia:*

> (1) The conditions under which a finance charge may be imposed, . . .

> (2) The method of determining the balance upon which a finance charge will be imposed, . . .

> (3) The method of determining the amount of the finance charge, . . .

> (4) [p]eriodic rates used to compute the finance charge . . ., and the corresponding nominal annual percentage rate, . . .

> (5) Identification of other charges which may be imposed as part of the plan, . . .

> (6) [a] statement that a security interest has been or will be taken in (A) the property purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type,

> (7) A statement . . . [of] an obligor and the creditor's responsibilities.

The disclosure requirements for direct mail credit card applications and solicitations are governed by 15 U.S.C. § 1637(c), which provides in pertinent part that:

> [ (1)(A) ] . . . [Any] solicitation to open an [open end consumer credit] account without requiring an application, that is mailed to consumers shall disclose the following information, . . .

(i) Annual percentage rates, . . .

(ii) Annual and other fees, . . .

(iii) Grace period, . . .

(iv) Balance calculation method . . . .

(B) Other information: In addition to the information required to be disclosed under subparagraph (A), each application or solicitation to which such subparagraph applies shall disclose clearly and conspicuously the following information, . . .

(i) Cash advance fee, . . .

(ii) Late fee, . . .

(iii) Over-the-limit fee.

Taking Miller's factual allegations to be true, as is required on a motion to dismiss under Rule 12(b)(6), EAB and Hall have not violated the letter of § 1637.

■ However, the TILA's disclosure requirements need not be read with total literalness. In *Gambardella v. G. Fox & Co*, 716 F.2d 104, 108 (2d Cir.1983), our Court of Appeals stated that "[t]he absence of an express disclosure requirement in the regulations is significant, although not conclusive, evidence that disclosure is not required." Yet the courts, "must be prepared, in appropriate cases, to infer from the statutory and regulatory schemes, and from TILA's underlying policies, disclosure requirements beyond those expressly stated in the regulations." *Id.*

Looking first, then, to the statutory and regulatory schemes, TILA is very specific about its scope. None of the requirements under either 15 U.S.C. § 1637(a) or § 1637(c) purports to govern promotional inducements unrelated to credit terms such as the EAB companion certificate offered to Miller. The disclosure of terms and conditions on the use of free gifts, designed specifically to induce customers to enter into credit card agreements, clearly does not fall under the mandatory disclosure requirements covered by the TILA.

■ Regulation Z adds nothing to the statutory language. The general disclosure requirements are governed by 12 C.F.R. §§ 226.5 and 226.6. The items subject to disclosure are essentially the same as those found under 15 U.S.C. §§ 1637(a) and 1637(c), and deal specifically with finance charges, interest rates, consumer rights and creditor responsibilities regarding billing matters, grace periods, cash advance fees, late fees and over-credit-limit fees. Terms and conditions affecting the use of travel certificates do not fall within the TILA's regulatory scheme.

■ Thus, the only alternative way to bring Miller's claim under the TILA is if it is within the purpose of the statute to regulate offers which accompany credit card solicitations. 15 U.S.C. § 1601(a) provides in pertinent part that the purpose of credit card disclosures is:

to assure a meaningful disclosure of *credit terms* so that the consumer will be able to compare more readily the various *credit terms* available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

(emphasis added). The terms and conditions affecting the use of the companion certificate are unrelated to credit terms regulated under the TILA. The question is whether a "meaningful" disclosure of credit terms extends to the disclosure of terms and conditions of offers, made in order to induce people to enter into credit card arrangements. In *Gambardella*, the Court stated that a balance must be struck between "competing considerations of complete disclosure . . . and the need to avoid . . . [informational overload]." *Id.* at 110 (quoting S.Rep. No. 73, 96th Cong., 2d Sess. 3 (1979), *reprinted in* 1980 U.S.C.C.A.N. 236, 281). In the case at bar, it is inconceivable that Congress sought to regulate items for disclosure beyond those related to "credit terms."

■ Miller claims that the offer of a companion certificate was designed to induce individuals to sign up with EAB, and in reliance on this offer, he applied for, received and used the EAB credit card. Miller therefore concludes that the companion ticket was, and was intended to be, a material term of EAB's credit agreements with its potential customers. A "material term" of a credit agreement and a "credit term" are not interchangeable. The statutory language and the TILA's underlying policies indicate Con-

gress' intention that only credit terms be subject to disclosure.

For the reasons stated above, Defendants' motion to dismiss the TILA claim will be granted.

### III. The Motion to Dismiss the State Claims Will Be Granted

Having dismissed Miller's federal claim, this Court has jurisdiction only through diversity of citizenship, under 28 U.S.C. § 1332(a).

■ Under 28 U.S.C. § 1332(a), the district courts have original jurisdiction of civil actions where the matter in controversy exceeds $50,000 and is between citizens of different states.[1]

■ In a class action, the jurisdictional amount cannot be satisfied by the aggregation of claims. Each plaintiff must satisfy the requisite amount. See Zahn v. International Paper Co., 469 F.2d 1033 (2d Cir. 1972), aff'd, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); Rock Drilling Local Union No. 17 v. Mason & Hanger Co., 217 F.2d 687 (2d Cir.1954), cert. denied, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955); Pariente v. Scott Meredith Literary Agency, Inc., 771 F.Supp. 609 (S.D.N.Y.1991).

■ The amount in controversy must appear on the face of the complaint or be established by proof that the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $50,000. In his Amended Complaint, Miller did not specify the amount of actual damages but rather left the amount to be determined at trial. On the facts alleged, Miller's actual damages cannot exceed a few thousand dollars: a figure tied to his inability to use the Companion Certificate for a round-trip ticket to France in July.

■ Miller contends that even if actual damages do not satisfy the requisite jurisdictional amount, the amount of punitive damages will make up the difference. In determining the amount in controversy, the Court may also consider bona fide claims for punitive damages. See Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); A.F.A. Tours Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir.1991). However, the use of punitive damages to satisfy the jurisdictional amount warrants "special judicial scrutiny." Career Initiatives Corp. v. Palmer, 893 F.Supp. 295, 296 (S.D.N.Y. 1995). Indeed, "in computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages." Zahn, 469 F.2d at 1034.

■ The courts' heightened scrutiny includes determining whether, given the facts alleged, damages are recoverable under state law. If the applicable law would not entitle the plaintiff to the sums claimed as punitive damages, such sums should be excluded in assessing the amount in controversy. Id.

■ Under New York law, punitive damages are recoverable only where a wrongful motive exists, or where there was wilful and intentional misdoing, or reckless indifference. See 36 New York Jur.2d § 175 (1984). Punitive damages are generally not recoverable under actions for breach of contract, see Reifenstein v. Allstate Ins. Co., 92 A.D.2d 715, 461 N.Y.S.2d 104 (4th Dep't 1983); Vanderburgh v. Porter Sheet Metal, Inc., 86 A.D.2d 688, 446 N.Y.S.2d 523 (3d Dep't 1982), unless the defendant's actions involve a degree of bad faith evincing a "disingenuous or dishonest failure to carry out a contract." Williamson, Picket, Gross, Inc. v. Hirschfeld, 92 A.D.2d 289, 460 N.Y.S.2d 36, 41 (1st Dep't 1983). "[M]ere fraud is insufficient to support a claim of punitive damages.... [P]unitive damages [are] available only where [the] defendant acts with evil and reprehensible motives." Wallach Marine Corp. v. Donzi Marine Corp., 675 F.Supp. 838, 842 (S.D.N.Y.1987). Even if the allegations sound directly in fraud, the recovery of punitive damages depends upon proof of the "defendant's moral culpability for gross conduct." Janina Travel Bureau, Inc. v. Kali-

---

1. Although not raised in the moving papers, it is worth noting that Miller and defendant Hall are both residents of Missouri. This effectively destroys the diversity between the parties since in a class action, there must be complete diversity between the named plaintiff and all of the named defendants. See In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 145 (2d Cir.1987); Union Carbide Corp. v. Air Prods. & Chems. Inc., 73 F.R.D. 620 (S.D.N.Y.1977); Lavan Petroleum Co. v. Underwriters at Lloyds, 334 F.Supp. 1069 (S.D.N.Y. 1971).

**1168**

*son,* 72 A.D.2d 916, 422 N.Y.S.2d 322, 323 (4th Dep't 1979).

Even viewing the facts in the light most favorable to the plaintiff, as is the Court's duty on a motion to dismiss, Miller's claims do not entitle him to punitive damages so many times his actual damages.

Miller has not satisfied the requisite jurisdictional amount under 28 U.S.C. § 1332 for subject matter jurisdiction, and the parties do not satisfy the diversity of citizenship required under 28 U.S.C. § 1332(a). The motion to dismiss the state claims will be granted.

### Conclusion

For the reasons set forth above, the TILA claim is dismissed for failure to state a claim on which relief can be granted, and the remaining claims are dismissed for lack of subject matter jurisdiction.

It is so ordered.