DAGAR GROUP, LTD., Appellant, v SOUTH HILLS MALL, LLC, et al., Respondents. [786 NYS2d 72]—

In an action, inter alia, to recover a real estate brokerage

commission, the plaintiff appeals from an order of the Supreme Court, Dutchess County (Brands, J.), dated July 29, 2003, which, upon a decision of the same court dated July 1, 2003, among other things, denied the plaintiff's motion for summary judgment on the complaint and granted the defendants' cross motion for summary judgment dismissing the complaint.

Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the defendants' cross motion which was for summary judgment dismissing the complaint insofar as asserted against the defendants South Hills Mall, LLC and Lavipour & Co., Inc., and substituting therefor a provision denying that branch of the cross motion; as so modified, the order is affirmed, with costs, and the complaint is reinstated insofar as asserted against those defendants.

The defendant South Hills Mall, LLC (hereinafter South Hills), is the owner and the defendant Lavipour & Company, Inc. (hereinafter Lavipour), is the operator of a retail shopping center known as the South Hills Mall (hereinafter the Mall). The plaintiff entered into a written brokerage agreement with Lavipour that terminated on December 31, 2000. Pursuant to that agreement, the plaintiff was required to provide Lavipour with a list of prospective tenants it had solicited within 30 days of the termination date and the plaintiff would be entitled to a commission if, within one year after the list was registered with Lavipour, a lease for space in the Mall was "signed and delivered" with any prospective tenant solicited by it. The plaintiff solicited JDC Industries, Inc. (hereinafter JDC), as a prospective tenant for the subject premises. By letters dated January 19, 2001, and January 26, 2001, the plaintiff provided Lavipour with the list of prospective tenants that it had solicited, including JDC. By letter dated February 5, 2001, Lavipour acknowledged that JDC was a prospective tenant that had been procured as a result of the plaintiff's solicitation. After intermittent negotiations and the exchange of draft leases for more than one year, Lavipour delivered execution copies of a lease to JDC by overnight delivery on January 21, 2002.

The proposed lease contained, inter alia, standard provisions entitling the tenant to quiet enjoyment of the premises and requiring that the tenancy be subordinate to the interests of South Hills' mortgagee, the defendant Dime Savings Bank of New York, FSB, New York Agency (hereinafter the Dime). At the tenant's request, a clause had been added to the quiet enjoyment provision stating that "Landlord shall obtain a subordination, nondisturbance and attornment agreement from Landlord's lender, and Tenant will not be required to represent any

condition that is not true," and to the subordination provision stating that "[n]otwithstanding the foregoing, Tenant's subordination to any mortgage or deed of trust shall be contingent upon Tenant executing a subordination, nondisturbance and attornment agreement reasonably acceptable to Landlord's lender."

JDC executed the lease and returned it to Lavipour's attorney on January 25, 2002, under a cover letter stating that the lease was to be held in escrow until JDC received an executed document from the Dime indicating that JDC's tenancy shall not be affected by a default in the landlord's mortgage. Lavipour's attorney rejected the lease by telefax on January 28, 2002, stating that "until the Landlord better understands the financial condition of JDC, a transaction will not proceed." On February 4, 2002, Lavipour faxed to JDC a revised draft of the lease containing a modification to the subordination provision providing that the form of subordination and nondisturbance agreement (hereinafter the SNDA) required to be executed by the landlord, the tenant, and the Dime should be substantially similar to the SNDA attached as exhibit "6" to the lease. On February 7, 2002, Lavipour sent to JDC by overnight delivery, execution copies of the lease. By letter dated February 10, 2002, JDC returned the executed lease under a cover letter that stated, "the validity of this lease is dependant [sic] upon [the Dime] and/or its successor executing the SNDA that is exhibit 'G' in the lease." On February 13, 2002, Lavipour executed the lease. On February 22, 2002, the SNDA was executed by Lavipour and on March 1, 2002, by JDC. Despite the completion of the transaction, Lavipour refused to pay the plaintiff's brokerage commission in the amount of $118,338 on the ground that the lease had not been "signed and delivered" within the time required by the agreement. This litigation ensued.

" 'It is well settled that absent an agreement to the contrary, a real estate broker earns his commission when he produces a party who is ready, willing and able to purchase or lease on the terms set by the seller lessor' ([see] Holzer v Robbins, 141 AD2d 505, 506). However, a broker and his principal may depart from the general rule and, by agreement, require the performance of an additional event (see, e.g., Bigman Assocs. v Fox, 133 AD2d 93; Williamson, Picket, Gross v Hirschfeld, 92 AD2d 289)." (Sauerhoff-Kessler Realty Corp. v Roma Shopping Plaza, 201 AD2d 477, 478 [1994].) Where, however, the principal is responsible for the failure of the additional event on which the broker's entitlement to a commission is conditioned, the principal is not relieved of liability for the commission by rea-

son of the failure of the condition (*see Lane-Real Estate Dept. Store v Lawlet Corp.*, 28 NY2d 36, 43 [1971]).

Applying these principles here, the plaintiff failed to meet its burden on its motion for summary judgment of establishing its entitlement to judgment as a matter of law, while the defendants met their burden on that branch of their cross motion which was for summary judgment dismissing the complaint insofar as asserted against the defendants South Hill and Lavipour (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Zuckerman v City of New York*, 49 NY2d 557 [1980]), by establishing that no lease was "signed and delivered" by the date required under the brokerage agreement. However, in opposition, the plaintiff raised a triable issue of fact with respect to whether South Hills and Lavipour were responsible for the failure of that condition by delaying execution of the lease.

Neither the fact that the lease contemplated the subsequent execution of an SNDA with the Dime, nor the letters from JDC purporting to make the validity of the lease contingent upon that agreement, affect this conclusion, since, pursuant to the agreement, the plaintiff's commission was earned when the lease was "signed and delivered." In the absence of language in the agreement requiring more, the possession by one party of a right to cancel the lease thereafter does not defeat the broker's claim (*see Hecht v Meller*, 23 NY2d 301 [1968]). While the execution of the SNDA was a condition to the subordination provision of the lease, it was not a condition precedent to the lease. The cover letter requiring that the lease be held in escrow pending the receipt of the SNDA executed by the Dime, did not affect the respective obligations of the parties under the executed lease. In any event, the fact that Lavipour and South Hills did not hold the lease in escrow and executed it eight days before JDC received the SNDA from the Dime, raised a triable issue of fact as to the parties' understanding regarding the meaning and effect of the cover letter. Prudenti, P.J., Ritter, H. Miller and Spolzino, JJ., concur.