OPINION OF THE COURT
Elliott Wilk, J.
Defendants Harcourt Brace Jovanovich, Inc. (Harcourt) and the Hearst Corporation (Hearst) move for summary judgment dismissing, respectively, the first and second causes of action of the complaint. These breach of contract causes of action involve defendants’ obligations to publish plaintiff’s book, The Execution of Charles Horman, republished in paper under the title Missing.* Plaintiff cross-moves to amend the complaint to provide for punitive damages on the first and second causes of action.
In March 1977, Hauser entered into a contract with Har *84 court to write a book about the disappearance and death of Charles Horman. Mr. Horman, a United States citizen, died in Chile, under mysterious circumstances, soon after the Pinochet coup. Under the terms of this contract, Harcourt obtained exclusive publishing rights to the book. If it went out of print after two years from the date of original publication, plaintiff had the right to demand that Harcourt either reissue the work or terminate the agreement and revert all rights to him. In 1978, Harcourt published the hard-cover edition under the title The Execution of Charles Horman.
In March 1979, Harcourt and Hearst entered into a contract giving Hearst exclusive license to publish the paperback version of the book. In 1980, Hearst published the first paperback edition under the title The Execution of Charles Horman. In 1982, Hearst republished the paperback version under the title Missing to coincide with the release of a motion picture of the same title, which was based on the book.
In January 1983, three United States officials, who had been stationed in Chile at the time of Horman’s death, commenced a libel suit in Federal court against Hauser, Hearst, Harcourt and people involved with the motion picture. In 1984, the suit was dismissed as to Hauser, Hearst and Harcourt.
In early 1983, because of the suit, Hearst canceled a scheduled reprinting of the paperback version of Missing and the book went out of stock. At the same time, Harcourt stopped meaningful efforts to sell the hard-cover edition of The Execution of Charles Horman. Even after the suit was dismissed, Harcourt and Hearst refused to reissue and promote the book. By May 1985, the hardcover was also out of print. Harcourt never went to press with a hard-cover edition under the title Missing.
In June 1983, and periodically thereafter, plaintiff requested that Harcourt and Hearst either reissue and promote Missing or effectuate a reversion of rights to him so that he could find another publisher. Defendants refused these requests.
In support of their motions for summary judgment Harcourt and Hearst contend that the Hauser-Harcourt contract and the Harcourt-Hearst contract gave them the right to exploit and reprint Hauser’s work, but imposed no enforceable obligation upon them to promote and publish the work. I disagree.
The Court of Appeals has held that "an implied covenant of fair dealing and good faith” binds parties to contracts. (Van *85 Valkenburgh, Nooger & Neville v Hayden Publ. Co., 30 NY2d 34, 45, cert denied 409 US 875 [1972].) The principle of good faith and fair dealing inherent in contractual relationships is especially important where, as here, "the essence of the contract is the grant of a license under which the fate of the subject matter is placed exclusively with the licensee for the purpose of exploitation and profit.” (Havel v Kelsey-Hayes Co., 83 AD2d 380, 382 [4th Dept 1981].) The question of whether defendant’s conduct in allowing the book to go out of print breached this obligation presents issues of fact precluding summary judgment. (See, Schwartz v Marien, 37 NY2d 487, 493 [1975].)
Similarly, it cannot be said as a matter of law that Harcourt did not breach a contractual obligation by failing to effectuate a reversion of rights to Hauser. Harcourt’s interpretation of the out-of-print provision of the Hauser-Harcourt contract renders Hauser’s right to reversion meaningless. Because contracts are to be construed in a way which is equitable to both parties, and not in a way which gives "one of the parties an unfair or unreasonable advantage over the other”, I must reject Harcourt’s interpretation. (Rush v Rush, 19 AD2d 846 [2d Dept 1963]; see also, Matter of Friedman, 64 AD2d 70, 82 [2d Dept 1978].)
Hearst’s argument that it is entitled to summary judgment because it has no contractual obligation to plaintiff also lacks merit. Based on the standard articulated by the Court of Appeals in Fourth Ocean Putnam Corp. v Interstate Wrecking Co. (66 NY2d 38, 44-46 [1985]), I find that Hauser was an intended third-party beneficiary of the Harcourt-Hearst contract and therefore has enforceable rights with respect to that agreement. (See also, Goodman-Marks Assocs. v Westbury Post Assocs., 70 AD2d 145, 148 [2d Dept 1979].) The Hauser-Harcourt contract clearly contemplated that Harcourt would sell its rights to publish the paperback version of the book for Harcourt’s and Hauser’s mutual advantage. (See, Hauser-Harcourt contract § 18 [b].) Harcourt’s sale of the paperback publishing rights would benefit Hauser not only monetarily, but also in the much wider distribution of his work. Thus, it is apparent that Harcourt, the promisee in the Harcourt-Hearst contract, intended to give Hauser the benefit of Hearst’s promised performance (publication of the paperback edition).
Accordingly, defendants’ motions for summary judgment are denied.
*86 Plaintiffs cross motion to amend his complaint to provide for punitive damages on the first and second causes of action is granted. Leave to amend a complaint is to be freely granted. (CPLR 3025 [b].) The merits of the proposed amendment need not be examined "unless the insufficiency or lack of merit is clear and free from doubt.” Leave to amend should be denied only where the proposed amendment is "palpably insufficient as a matter of law or is totally devoid of merit” (Norman v Ferrara, 107 AD2d 739, 740 [2d Dept 1985]).
Although breaches of contract are not generally susceptible to punitive damages awards, a plaintiff may obtain punitive damages on a breach of contract claim where she/he shows "that the wrongdoing was of a continuous and systematic nature, and aimed at the public generally”. (Merrick v Four Star Stage Light., 60 AD2d 806, 807 [1st Dept 1978]; cf., Garrity v Lyle Stuart, Inc., 40 NY2d 354, 358 [1976] [punitive damages denied where no "public right” involved].) Plaintiffs claim that defendants’ conduct was outrageous and wanton and has interfered with the public’s right to buy and read his book is sufficient on its face and is not "totally devoid of merit”. (Norman v Ferrara, supra, at 740.)
Plaintiffs application to amend paragraphs 43 and 44 of the original complaint (now carried forward as paragraphs 35 and 36 of the amended complaint) is granted without opposition.
Counsel are to appear for a conference on March 30, 1988 at 9:30 a.m. in Part 6; room 341, to select a trial date.

 Plaintiff has withdrawn the third, fourth and fifth causes of action. The sixth and seventh causes of action, which relate to another book by Hauser and raise claims only against Hearst, are not subject to this motion.