TVT RECORDS and TVT Music,
Inc., Plaintiffs,

v.

THE ISLAND DEF JAM MUSIC
GROUP and Lyor Cohen,
Defendants.

No. 02 CIV. 6644.

United States District Court,
S.D. New York.

May 21, 2003.

James E. d'Auguste, Akin, Gump, Strauss, Hauer & Feld, L.L.P., James Philip Chou, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York, NY, Peter L. Haviland, Rhonda R. Trotter, Akin Gump Strauss Hauer & Feld, LLP, Los Angeles, CA, Tuneen E. Chisolm, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York, NY, for TVT Records, TVT Music, Inc.

Michael T. Mervis, Proskauer, Rose, L.L.P., New York, NY, Mary Mulligan, Esq., Universal Music Group, New York, NY, for the Island Def Jam Music Group.

Robert J. Eddington, Proskauer Rose LLP, Michael T. Mervis, Alexander Kaplan, Proskauer, Rose, L.L.P., Mary Mulligan, Esq., Universal Music Group, Matthew S. Dontzin, James M La Rossa, New York, NY, for Lyor Cohen.

### DECISION AND ORDER

MARRERO, District Judge.

During the damages phase of the trial of this matter, defendants Lyor Cohen ("Cohen") and The Island Def Jam Music Group ("IDJ" and, collectively with Cohen, the "Defendants") moved this Court for an order pursuant to Rule 50(a) of the Federal Rules of Civil Procedure for judgment as a matter of law. The Court heard arguments from the Defendants and from plaintiffs TVT Records and TVT Music, Inc. (collectively, "TVT") on the matter on May 1, 2003 and reserved judgment on the motion, indicating that it would set forth its findings, conclusions and reasoning following the jury's verdict. The Court also received and reviewed Defendants' Rule 50(a) Motion (undated) on May 1, 2003 and Plaintiffs' Opposition to Defendants' Motions Pursuant to FRCP 50(a) dated May 6, 2003. On May 2, 2003, the jury returned a verdict awarding damages on all of TVT's claims it was asked to consider.

At this time, the Court will briefly address the Defendants' Rule 50(a) motion. For the reasons discussed below, the Defendants' motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure is denied.

## I. DISCUSSION

### A. STANDARD OF REVIEW

Rule 50(a) of the Federal Rules of Civil Procedure allows a party to move for judgment as a matter of law at any time before the case has been submitted to the jury. *See Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 134 (2d Cir.1999). A motion filed pursuant to Rule 50(a) may be granted if there is no legally sufficient evidentiary basis to support the non-moving party's claim or defense. *See* Fed. R.Civ.P. 50(a); *Wimmer,* 176 F.3d at 134; *Piesco v. Koch,* 12 F.3d 332, 340 (2d Cir. 1993); *Sanders v. The City of New York,* 200 F.Supp.2d 404, 406 (S.D.N.Y.2002). In assessing the merits of such a motion, courts must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Wimmer,* 176 F.3d at 134; *Piesco,* 12 F.3d at 340; *Sanders,* 200 F.Supp.2d at 406.

### B. COMPENSATORY DAMAGES

#### 1. Breach of Contract

■ With respect to TVT's claim of breach of contract against IDJ, TVT upon a proper showing is entitled to special damages in the form of lost profits from the CMC Album adjusted in accordance

with the relevant profit sharing arrangements, the details of which are in evidence. In this regard, relevant evidence includes TVT's expert testimony by Bruce Kolbrenner ("Kolbrenner") and David Berman ("Berman") regarding the projected value of the CMC Album which the jury can reasonably credit to arrive at an award on this claim with reasonable certainty against IDJ. In particular, Kolbrenner's testimony and report presented sales, revenues, and profit projections reflecting alternative assumptions among which the jury would select based on the broader evidence before it, including testimony of CMC Album marketplace performance offered by, among others, Irv Gotti ("Gotti"), Berman, Steve Gottlieb ("Gottlieb"), and Kolbrenner himself. A jury could reasonably conclude, furthermore, based on evidence of Cohen's and IDJ's history and experiences in the record industry, that they did or should have contemplated these losses during 2001–2002, which, according to the jury's findings during the liability phase of this trial, was the period during which the Side Letter Agreement was formed and then breached by IDJ.

### 2. Tortious Interference With Contractual Relations

■ With respect to TVT's claim of tortious interference with contractual relations, TVT is entitled to the monetary loss of the benefits of the Heads of Agreement. Once again, relevant evidence includes Kolbrenner's and Berman's testimony and expert reports regarding the projected value of the CMC Album which the jury can reasonably credit to arrive at an award with reasonable certainty against Cohen and IDJ. Taken together with other evidence of marketplace performance offered by, among others, Gotti and Gottlieb, a jury could reasonably isolate and credit one of the alternative projections offered by Kolbrenner to determine a proper award. Accordingly, the Defendants' posi-

tion that the evidence cannot support with reasonable certainty a finding of damages for tortious interference with contractual relations must be rejected.

### 3. Lost Profits and Goodwill

■ With respect to TVT's claims for breach of contract and tortious interference with contractual relations, TVT seeks special damages for loss of goodwill. Goodwill is the intangible business value reflecting the basic human tendency of the consuming public—here, both album purchasers and artists, as well as other commercial entities—to do business with TVT. In this vein, the relevant evidence includes testimony and documents establishing the existence of advertisements indicating a forthcoming CMC Album release by TVT in November 2002, and, clearly, the CMC Album has not yet been released or marketed. While the extent of the impact of missed release dates has been the subject of dispute, it is clear that TVT's assertion of some harm to its public image can reasonably be credited. For instance, the evidence includes testimony by Gottlieb of the loss of TVT's credit line as a result of the disruption of TVT's cash flow resulting from the CMC Album not being released as expected. Though Defendants presented evidence that TVT's goodwill and financial condition may have been impaired by difficulties and related litigation that one of its affiliated entities had faced with one of its lenders prior to the parties' dispute over the CMC Album, the principle of causation requires that Defendants' conduct be only a proximate cause of TVT's damage, not the only cause. Thus, a reasonable jury could find that even if TVT had already suffered some loss of goodwill from other events unrelated to the Defendants' wrongs here, the damage in question could have been substantially aggravated by Defendants' actions, or indeed that Defendants' conduct was a contribut-

ing cause or the actual cause of the harms in question. Moreover, the jury could also credit testimony that the financial difficulties and collateral litigation with the other lender referred to above pertained to and primarily affected not TVT but the affiliate entity that was actually involved.

Additionally, a jury can reasonably credit testimony by Gottlieb of damage to his business relationship with Gotti, a highly successful producer who is able to provide to business partners his own talent as well as that of other artists with whom he has relationships. A reasonable jury can also credit this testimony as a basis to conclude that TVT's general business reputation has suffered as a result of IDJ's and Cohen's interference and TVT's not having been able to release the particular product at issue, the CMC Album. Furthermore, a jury can rationally infer that the Defendants understood and should have foreseen such harm to TVT's goodwill throughout 2001–2002, the relevant time period during which the acts of breach of contract and interference occurred, given the evidence of Defendants' own lengthy history and experience in the record business.

### 4. *Fraud By Fraudulent Concealment*

■ Regarding TVT's claims for damages relating to fraud by fraudulent concealment, TVT is entitled to recover its out-of-pocket expenses corresponding to monies TVT expended by reason of its reliance on the Defendants' acts of concealment. Relevant evidence of such monies includes expenses incurred as advances to the artists pursuant to the Heads of Agreement, studio expenses paid by TVT for the recording of materials for the CMC Album, and advertising costs to promote the album. Accordingly, the Court concludes that the record allows for a determination of compensatory damages with reasonable certainty pursuant to TVT's claim of fraud by fraudulent concealment as against both Cohen and IDJ.

### 5. *Copyright Infringement*

With respect to TVT's copyright infringement claims, the relevant evidence includes business records reflecting sales figures and revenues generated by the "Irv Gotti Presents: The Inc." CD and DVD. While the record includes some dispute as to the interpretation of these materials and to the amount of profits realized, if any, a jury can reasonably interpret these records as indicating the receipt of profits that can then be allocated to the infringed material as the jury rationally deems appropriate. Furthermore, with respect to "Get Tha Fortune," there is no reason to conclude that the jury would be unable to reasonably arrive at an appropriate damages figure within the statutory range set by the Copyright Act. For these reasons, IDJ's and Cohen's motions to dismiss TVT's claim for compensatory damages pursuant to IDJ's and Cohen's copyright infringement are denied.

## C. *PUNITIVE DAMAGES*

### 1. *Malice and Recklessness or Gross, Wanton, or Willful Conduct*

■ Turning now to the matter of punitive damages, the Court begins by noting that the matter of the availability of such damages is not the proper subject of the present motion, and that matter has already been addressed elsewhere. With respect to the sufficiency of the evidence in support of punitive damages, the Court concludes that the record contains sufficient evidence to permit a reasonable jury to find that IDJ's and Cohen's actions were malicious and reckless or gross, wanton, or willful. Three series of activities predominantly support such a finding, in the Court's view.

First, the CMC Album project clearly presented IDJ and Cohen with a delicate business decision given their exclusivity relationships with Ja Rule and Gotti.

Nonetheless, there is sufficient evidence from which a jury can reasonably conclude that the Defendants, without regard to the consequences for TVT, responded to this business development by deliberately subordinating TVT's contractual rights pursuant to the Heads of Agreement with the artists in order to placate the artists pending their contract renegotiations with IDJ, all the while never intending to satisfy their own representations of cooperation with and assent to the CMC Album project. Such evidence includes, among other things: a credibility analysis the jury must make as between the characterization of these events by Gottlieb and Cohen in light of the instances in which Cohen's trial testimony was impeached with his own prior statements; testimony of William Leibowitz ("Leibowitz"), TVT's counsel, who testified that he received assurances of IDJ's assent to the Side Letter Agreement from Jeffrey Kempler ("Kempler") and IDJ attorney William Lieberman, when taken together with both the lack of a response to TVT's November 15, 2001 so-called "reliance letter" by IDJ and IDJ's August 14, 2002 letter to Leibowitz purporting to reject the Side Letter Agreement (as though IDJ had never assented to it); and the timing of this August 14, 2002 letter being delivered days after Ja Rule's contract had been renegotiated (Gotti's contract was renegotiated in late 2001 and through early 2002). Additional reasons are set forth in sections I.B and I.E of this Court's Decision and Order dated April 8, 2003, which discuss the sufficiency of the evidence supporting a finding of liability on TVT's claims of breach of contract against IDJ and fraud by fraudulent concealment against IDJ and Cohen in the context of the Defendants' prior Rule 50(a) motion during the liability phase of the trial of this matter.

Second, the evidence, including testimony by Kempler regarding IDJ's renegotiation of Ja Rule's services contract as well as the plain language of the amended contract itself and its various versions, can support a reasonable inference that, at least in and around August of 2002, IDJ led or encouraged the artists to obtain the CMC Album materials for release by IDJ rather than TVT. In addition, Gotti and others testified that in the first version of Ja Rule's "The Last Temptation" solo album Gotti produced for IDJ, he included or sought to include some of the songs that had been recorded and intended for the CMC Album, the production costs of which TVT had paid.

The third basis concerns the recent deliveries or attempts at delivery of materials for the CMC Album on February 26, 2003 and April 25, 2003, along with surrounding activities such as IDJ's waiver of exclusivity to the services of Ja Rule and Gotti first expressed to TVT by Cohen in late February and early March 2003. The parties dispute the significance of these transactions. IDJ and Cohen argue that these activities represent good faith cooperation and satisfaction of the Defendants' obligations to TVT. TVT claims that these actions, rather than reflecting any reasonable opportunity to mitigate, represent a continued pattern of coordinated litigation tactics designed to deprive TVT of due compensation while simultaneously denying TVT any meaningful benefit of the Heads of Agreement. In support of the latter interpretation, the relevant evidence includes the date of the February 26, 2003 delivery being so close to the commencement of this trial's liability phase, as well as the April 25, 2003 delivery of updated CMC Album materials to Gottlieb's apartment on the Friday preceding the commencement of the damages phase on Monday April 28, 2003. Accordingly, particularly in light of the parties' prior dealings indicated by the record, not only can a jury reasonably reject the Defendants' argument, on this evidence, that TVT missed a reasonable opportunity to miti-

gate, but it can also, by the same reasoning, conclude that the Defendants' acts of purported delivery were in fact a continuation or extension of bad faith, self-serving tactics perpetrated at the continued expense of TVT.

In other words, a rational jury may construe these actions as continued efforts by the Defendants to frustrate TVT's contractual rights under the Heads of Agreement by forcing TVT to accept, under the guise of mitigation of damages, a rushed CMC Album with no meaningful opportunity by TVT to participate in or comment on its composition. A jury can therefore conclude that the public interest is furthered by punishing, and thus deterring, such conduct to protect the integrity of business dealings as well as to discourage manipulation of legal processes and forums the laws creates to fairly resolve civil disputes. Indeed, Cohen's equivocation during his damages phase testimony concerning his role in the breach of the Side Letter Agreement and interference with the Heads of Agreement, and his somewhat ambiguous explanation as to what he would have done differently, may be interpreted by a rational jury as evidence that he and IDJ would not be deterred from repeating such conduct in the future absent further penalty beyond compensatory damages.

These series of transactions—the apparent concealment of motives in 2001–2002, the renegotiation of Ja Rule's services contract with IDJ, and the recent deliveries of putative CMC Album materials—involved the actions of not only Cohen, Chairman of IDJ, but also, among others, Kempler, IDJ's Senior Vice President of Business and Legal Affairs, who, for example, signed then crossed out his signature on the Side Letter Agreement and who later

signed certain correspondence allegedly constituting or completing deliveries of CMC Album materials on the eve of the damages phase of trial. In this vein, corporate documents in evidence indicate that both Cohen and Kempler enjoy management control over the administrative and operational activities of Murder, Inc., in whose name the recent deliveries and surrounding actions occurred. The documentary and testimonial evidence establishing these overall activities could permit a jury reasonably to conclude that any malice and recklessness or any gross, wanton, or willful conduct discussed above could be attributed not only to Cohen but IDJ as well.

## 2. Conduct Aimed at the Public Generally

█ The Defendants dispute the sufficiency of TVT's evidence that Cohen's and IDJ's actions in question reflect a fraud not only upon TVT but also affecting the public generally. In the context of punitive damages awarded pursuant to TVT's claim for fraud by fraudulent concealment, a claim that the jury sustained during the liability phase, such an award need not be based on a showing of conduct aimed at the public generally. The case law to this effect is clear.[1]

Less clear is whether a public aim is necessary to award punitive damages pursuant to TVT's claim for breach of contract against IDJ, which the jury also sustained during the liability phase, when that claim involves, as here, an independently actionable tort in the form of a fraud. IDJ contests the propriety of punitive damages for breach of contract in this case on this basis, arguing that TVT has not presented competent evidence that the Defendant's wrongful conduct was directed at the public in general.

**1.** An illustrative list of cases establishing and applying this rule is set forth below at Appendix I.

During the Court's conferences with the parties regarding the proposed jury instructions and at the time Defendants initially made their Rule 50(a) motion, the Court voiced some doubts and reservations concerning whether a sufficient record existed to send this damages claim to the jury in light of the prerequisites, in particular, questions concerning the "public aim" element. The Court's doubts were grounded on uncertainties, confusion and contradiction it found in New York law in respect of this aspect of the requirements to support punitive damages for breach of contract. Some cases indicate that conduct directed at the public in general is required. Others suggest that the standard applies in the alternative to extraordinarily culpable behavior. Still other rulings have sustained such punitive damages awards absent any mention of such a prerequisite. None provides a precise definition or delimiting instructions as to what the public aim standard encompasses or guidance as to what it is designed to achieve.

Several leading New York Court of Appeals cases address this matter. *See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995); *Rocanova v. Equitable Life Assurance Society of the United States*, 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994); *Gordon v. Nationwide Mut. Ins. Co.*, 30 N.Y.2d 427, 334 N.Y.S.2d 601, 285 N.E.2d 849 (1972); *Walker v. Sheldon*, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961). These decisions have at times been interpreted, both by New York courts and federal courts of this District and Circuit, as requiring, among other things, in addition to morally reprehensible, wanton dishonesty, conduct aimed at the public in general.[2] These same cases have been interpreted, again, by courts both of New York and of this District and Circuit, as requiring a showing of heightened morally reprehensible, wanton dishonesty *as an alternative* to a showing of a public aim.[3] The case law on the matter is thus quite divided,[4] and the task of recon-

**2.** An illustrative list of such cases is set forth below at Appendix II.

**3.** An illustrative list of such cases is set forth below at Appendix III.

**4.** The posture of *Walker, Gordon, Rocanova,* and *New York University* and the language employed by the Court of Appeals in deciding these cases allow for such varying interpretations. For example, in *Walker*, the Court of Appeals noted that "there may be a recovery of exemplary damages in fraud and deceit actions where the fraud, aimed at the public generally, is gross and involves high moral culpability." 223 N.Y.S.2d 488, 179 N.E.2d at 498–99. But the Court of Appeals recognized the difficulty in formulating any categorical rule on the matter, explaining: "It may be difficult to formulate an all-inclusive rule or principle as to what is an appropriate case of the recovery of punitive damages, but it is our conclusion that the allegations of *the complaint before us*, if proved, would justify such an award. The pleading charges that defrauding the general public into entering publishing contracts, such as the one involved in the present case, was the very basis of the defendant's business. What is asserted is not an isolated transaction incident to an otherwise legitimate business, but a gross and wanton fraud upon the public." *Id.* 223 N.Y.S.2d 488, 179 N.E.2d at 499–500 (emphasis added).

In *Gordon*, the Court of Appeals stated that "the punitive nature of damage for the bad faith breach of contract is a characteristic of the law of contracts generally .... But a punitive measure of damages is not applied routinely for breach of contract; and bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract." 334 N.Y.S.2d 601, 285 N.E.2d at 854. While the relevant holding was based on the absence of bad faith rather than on any requirement of a public aim, *see id.* 334 N.Y.S.2d 601, 285 N.E.2d at 855, this case arose in the specific context of a breach of a contract for insurance coverage.

In *Rocanova*, the Court of Appeals elaborated the four-part formulation for punitive

ciling these varying interpretations is formidable.

In examining the matter, this Court has identified a narrower basis to reconcile the cases and resolve the uncertainties described as regards the case at bar. Whatever the import of the preceding authority treating the public aim standard either as an element in addition to morally reprehensible, wanton dishonesty or as an alternative to it, this Court construes a subset of the latter line of authority as establishing an exception to any presumed general rule requiring public aim rather than a basis for its abrogation.

In *Williamson, Picket, Gross, Inc. v. Hirschfeld,* 92 A.D.2d 289, 460 N.Y.S.2d 36 (1983), the State's Appellate Division First Department addressed the sufficiency of the complaint in an action to recover a real estate brokerage commission and punitive damages. The plaintiff represented a potential lessee of commercial space in a building owned by the defendant, and the complaint accused the defendant of withdrawing from an agreement to lease the premises to the plaintiff's client when another lessee, interested in a more lucrative lease of the entire building, emerged. The First Department sustained the plaintiff's demand for punitive damages for this breach of contract claim, explaining that "if [the defendant's] actions involve that degree of bad faith evincing a 'disingenuous or dishonest failure to carry out a contract,' ... punitive damages may be

damages in breach of contract cases, including a public aim; however, the question of a public aim was not in dispute. Rather, the cause of action for breach of contract, and the attendant demand for punitive damages, was dismissed for failure to "state a claim of egregious tortious conduct directed at the [plaintiff]. Only then does an alleged pattern of bad-faith conduct attain legal significance insofar as it demonstrates that a public wrong would be vindicated by the award of punitive damages." 612 N.Y.S.2d 339, 634 N.E.2d at 945.

awarded." *Id.* at 41 (quoting *Gordon,* 334 N.Y.S.2d 601, 285 N.E.2d at 854).

Similarly, and more explicitly, the First Department addressed the same issue in *Aero Garage Corp. v. Hirschfeld,* 185 A.D.2d 775, 586 N.Y.S.2d 611 (1992), where the plaintiff was the successor lessee of a parking garage owned by the defendant and alleged breach of contract by the defendant for failing to obtain an extension of a certificate of occupancy as required by the lease, and for interfering with the plaintiff's own efforts to obtain the certificate by opposing the plaintiff's application for a permit from the municipal agency. In this context, the First Department sustained an award of punitive damages, explaining:

[W]e find the defendants' actions in this case "involve that degree of bad faith evincing a disingenuous or dishonest failure to carry out a contract" ... which justify the imposition of punitive damages. Defendants were fully aware *from the outset* that their actions were blatantly in breach of the agreement with plaintiff and yet displayed their willingness to go to any lengths to achieve their ends. We cannot agree ... [that the defendant] should not be penalized when it invoked the types of methods used here, including the *fully knowing and intentional breach of unambiguous contractual provisions,* the flouting of court ordered injunctions and

In *New York University,* the Court of Appeals dismissed the plaintiff's demand for punitive damages pursuant to a claim of breach of contract for failing to state a violation actionable as an independent tort, adding that "[i]n view of this disposition, we have no occasion to address the sufficiency of the complaint's claim for punitive damages under the remaining prongs of the *Rocanova* test [including the matter of public aim]." 639 N.Y.S.2d 283, 662 N.E.2d at 770.

the bad faith institution of administrative proceedings.

*Id.* at 612 (citations omitted; emphasis added; internal quotations) (quoting *Gordon*, 334 N.Y.S.2d 601, 285 N.E.2d at 854, and *Williamson*, 460 N.Y.S.2d at 41). These cases are indicative of a distinct branch of authority repeatedly reiterated and applied by the courts of New York and of this District and Circuit.[5]

Apart from the debate over whether, as a categorical matter, sufficiently egregious moral culpability or wanton dishonesty can obviate the public aim requirement to support an award of punitive damages in a breach of contract action, these cases present a narrow exception to what appears to be an otherwise general requirement that some form of public rights be implicated in a defendant's wrongs. That exception can be fairly characterized along the following lines: absent conduct directed at the public in general, punitive damages may be available in a breach of contract claim where the plaintiff establishes a sufficiently high degree of bad faith by the defendant evincing disingenuous or dishonest failure to carry out contractual obligations, thus frustrating the plaintiff's rights to an aggravated extent, particularly where bad faith is apparent at or near the outset of the transaction and where the breached obligations are unambiguous.

This is precisely the situation in the case at bar. By finding IDJ and Cohen liable for fraud,[6] the jury accepted TVT's argument that the Defendants concealed their intent not to carry out their contractual obligations, despite representations of assent to the Side Letter Agreement—representations established implicitly in the jury's findings of liability pursuant to TVT's breach of contract claim—in order to placate Gotti and, later, Ja Rule, pending IDJ's impending contract renegotiations with the artists.[7] Indeed, Cohen characterized his feelings and activities regarding the CMC Album project during 2001 and 2002 as "ambivalent" and "wishy-washy" repeatedly during his damages phase testimony, (*see e.g.,* Trial Transcript, Damages Phase, at 303–305), and such ambivalence apparently never solidified into a definitive stance until August 14, 2002, days after Ja Rule's contract renegotiations had concluded (Gotti's contract renegotiations concluded in early 2002), when IDJ sent a letter to TVT's counsel purporting finally to reject the Side Letter Agreement.

This finding of fraud, and its implications as expounded above, establishes a dishonest or disingenuous intention not to carry out contractual obligations from at or near the outset of the parties' dealings in this matter, and bases for a rational finding of aggravated bad faith are delineated in the discussion set forth in section I.C(1) *infra.* Furthermore, for reasons discussed throughout this Decision and Order, and particularly in sections I.B(1), I.B(3), and I.C(1) *infra,* it is clear that IDJ's and Cohen's actions frustrated TVT's contractual right to release and exploit the CMC Album, harming TVT as a result. Finally, the contractual obligation

---

**5.** An illustrative list of such cases is set forth below at Appendix IV.

**6.** In a Decision and Order dated April 8, 2003, this Court rejected Defendants' motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure addressing the evidence adduced during the liability phase of this trial. Accordingly, the Court concluded that the evidence on record was sufficient to support a finding of liability pursuant to TVT's claim of fraud by fraudulent concealment against IDJ and Cohen. (Decision and Order dated April 8, 2003 at 10–12.)

**7.** The jury's finding of willfulness with regard to TVT's allegations of copyright infringement as against IDJ and Cohen further evinces reasoning to this effect by the jury.

to consent is unambiguous here, and, indeed, no argument of ambiguity on the matter has ever been raised by the parties. For these reasons, the Court concludes that a showing of harm to the general public is not required as an element of punitive damages in this case.

Even though, on the preceding legal analysis as applied to the facts of this case, a showing of conduct aimed at the public generally is not a necessary element to sustain a punitive damages award pursuant to TVT's claims of breach of contract and fraud, the Court notes in this regard the following events and supporting evidence, among others. First, as already discussed, a jury could rationally find indignant and morally reprehensible the recent pattern of deliveries of putative CMC Album materials first on February 26, 2003 and then again on April 25, 2003 (along with certain surrounding and intervening correspondences on the matter), which the jury rationally could interpret to be not a good faith effort to mitigate damages but a pattern of continued malice and an illustration of utter disregard for the rules and procedures contemplated by the judicial process for fairly resolving private disputes. While these actions are not what constitute the underlying breach of contract or fraud, they do directly arise out of the wrongdoings forming the heart of the present dispute, and, as previously indicated, they rationally could be construed by a reasonable jury as ongoing, self-serving efforts by the Defendants to frustrate TVT's contractual rights under the Heads of Agreement by forcing upon TVT a hurriedly created CMC Album without meaningful participation by TVT. To the extent that these actions implicate the judicial process, they can rationally be construed as implicating a public institution and, therefore, as being directed at the public generally, should the jury credit them in accordance with the evidence and arguments presented by TVT. *See e.g., Aero Garage*, 586 N.Y.S.2d at 613 (recognizing bad faith manipulation of administrative proceedings as a factor in support of punitive damages for breach of contract).

Second, the public generally has an interest in the creation and dissemination of works of art and the encouragement and protection of artistic and intellectual labor—vital interests reflected at the heart of several constitutional and statutory prescriptions. *See generally* U.S. Const. art. I, § 8, cl. 8 ("The Congress shall have the Power ... To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries ...."); U.S. Const. amend. I ("Congress shall make no law ... abridging the freedom of speech, or of the press ...."); the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.; Estate of Ernest Hemmingway v. Random House, Inc.*, 23 N.Y.2d 341, 296 N.Y.S.2d 771, 244 N.E.2d 250, 255 (1968) (recognizing in federal and New York law an interest in protecting speech and granting copyrights "to encourage and protect intellectual labor."); *Straus v. Am. Publishers' Assoc.*, 177 N.Y. 473, 69 N.E. 1107, 1107–1109 (1904) (recognizing public interest in nurturing and promoting the pursuit and creation of the arts). The public generally is impacted by Cohen's and IDJ's wrongdoings insofar as their actions impaired the creation and dissemination of a work of art that TVT intended to sell to the general public and which it had already advertised to the public at large. *See Licette Music Corp. v. A.A. Records, Inc.*, 196 A.D.2d 467, 601 N.Y.S.2d 297, 297–98 (1993) (sustaining punitive damages award for breach of contract and fraud claims where music distributor licensee deceptively camouflaged public sales to avoid royalty payments); *Hauser v. Harcourt Brace Jovanovich, Inc.*, 140 Misc.2d 82, 530

N.Y.S.2d 431, 434 (1988) ("Plaintiff's claim that defendants' conduct was outrageous and wanton and has interfered with the public's right to buy and read his book is sufficient on its face . . . .").

### 3. *The Awards*

For these reasons, the Court concludes that a sufficient showing of malice and recklessness or gross, wanton, or willful conduct has been established to permit a reasonable jury to award punitive damages pursuant to tortious interference with contractual relations and copyright infringement of "Get Tha Fortune." The same conclusion applies regarding TVT's breach of contract and fraud claims because, for the reasons indicated, a showing of conduct aimed at the public generally is not a necessary element on the facts of this case, though even if it were, the evidence, for the reasons indicated, would satisfy such a requirement. Therefore, Cohen's and IDJ's motions to dismiss TVT's claims for punitive damages are denied.

### 4. *Cohen as a Corporate Officer*

Finally, the Court notes that Cohen's argument that punitive damages are legally insufficient as against him because TVT's proof fails to overcome the distinction between a corporation and its officer is not properly within the purview of the present motion under Rule 50(a) arising out of the damages phase of this litigation.

## II. *CONCLUSION AND ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Defendants' motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure is denied.

**SO ORDERED.**

## *APPENDIX*

I. *CASES HOLDING THAT CONDUCT AFFECTING PUBLIC RIGHTS OR AIMED AT THE PUBLIC GENERALLY IS NOT A NECESSARY ELEMENT TO PUNITIVE DAMAGES IN CONNECTION WITH LIABILITY FOR FRAUD*

*Ostano Commerzanstalt v. Telewide Sys., Inc.,* 880 F.2d 642, 649 (2d Cir.1989) ("Nor do we agree that there must be acts aimed at the public to support an award of punitive damages in a fraud case. Rather, punitive damages may be awarded when fraud is gross, wanton, or willful, whether or not directed at the public generally." (citing *Borkowski,* 387 N.Y.S.2d 233, 355 N.E.2d at 287)).

*Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1118 (2d Cir.1986) ("Under New York law, by which we are governed in this diversity suit, punitive or exemplary damages may be awarded where the defendant's conduct amounts to such gross, wanton or willful fraud, dishonesty, or malicious wrongdoing as to involve a high degree of moral culpability, making it appropriate to deter the defendants from engaging in similar conduct in the future and to induce the victim to take action against the wrongdoer. . . . Proof of acts aimed at the public generally is not required . . . ." (citation omitted) (citing *Borkowski,* 387 N.Y.S.2d 233, 355 N.E.2d at 287)).

*Aldrich v. Thomson McKinnon Sec., Inc.,* 756 F.2d 243, 248 n. 5 (2d Cir.1985) ("Though we need not decide the issue, we note that the New York Court of Appeals has suggested that the showing of a fraud on the public is no longer a prerequisite to the award of punitive damages." (citing *Borkowski,* 387 N.Y.S.2d 233, 355 N.E.2d at 287)).

*Doehla v. Wathne Ltd., Inc.,* No. 98 Civ. 6087 (CSH), 2000 WL 987280, at *9

(S.D.N.Y. July 17, 2000) ("While there is no requirement that the fraud be aimed at the general public to recover punitive damages, plaintiffs must plead and prove that defendants engaged in gross, wanton, or willful fraud or other morally capable [sic] conduct." (citations omitted; internal quotations omitted)).

*Blank v. Baronowski,* 959 F.Supp. 172, 179 (S.D.N.Y.1997) ("Under New York law, punitive damages are allowable in tort cases involving claims for fraud, breach of fiduciary duty or tortious interference with contract even if there is no harm aimed at the general public so long as the very high threshold of moral culpability is satisfied." (citation omitted; internal quotations omitted)).

*Giblin v. Murphy,* 73 N.Y.2d 769, 536 N.Y.S.2d 54, 532 N.E.2d 1282, 1284 (1988) ("Nor can we accept defendants' argument that the punitive damages award must be overturned because there was no harm aimed at the public generally. Punitive damages are allowable in tort cases such as this so long as the very high threshold of moral culpability is satisfied . . . .").

*Borkowski v. Borkowski,* 39 N.Y.2d 982, 387 N.Y.S.2d 233, 355 N.E.2d 287, 287 (1976) ("It is not essential, as the Appellate Division stated, that punitive damages be allowed in a fraud case only where the acts had been aimed at the public generally.").

*Blakeslee v. Rabinor,* 182 A.D.2d 390, 582 N.Y.S.2d 132, 134 (1992) ("Originally, punitive damages were recoverable in fraud actions only where the fraud was aimed at the general public, was gross and wanton in nature and involved high moral culpability. . . . However, [the Court of Appeals has since] declared that it is 'not essential . . . that punitive damages be allowed in a fraud case only where the acts had been aimed at the public generally.'" (quoting *Borkowski,* 387 N.Y.S.2d 233, 355 N.E.2d at 287).)

*V.J.V. Transp. Corp. v. Santiago,* 173 A.D.2d 537, 570 N.Y.S.2d 138, 139 (1991) ("[I]t is not necessary to prove that the fraud was aimed at the public generally in order to justify an award of punitive damages.").

II. *CASES IN WHICH THE STANDARD COURTS APPLIED TO DETERMINE THE APPROPRIATENESS OF AN AWARD OF PUNITIVE DAMAGES IN CONNECTION WITH A BREACH OF CONTRACT CLAIM REQUIRED CONDUCT THAT BOTH DISPLAYS A HIGH DEGREE OF MORAL CULPABILITY AND IS DIRECTED AT THE PUBLIC GENERALLY*

*United States v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 160 (2d Cir.1996) ("Generally, punitive damages are not available for a breach of contract. However, where the breach of contract also involves a fraud evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, punitive damages are recoverable if the conduct was aimed at the public generally," (citations omitted; internal quotations omitted)).

*Durham Indus., Inc. v. The North River Ins. Co.,* 673 F.2d 37, 40 (2d Cir.1982) ("However, under New York law, punitive damages may not be awarded in breach of contract cases, which involve a private wrong and where no public rights are involved." (citations omitted)).

*New Paradigm Software Corp. v. New Era of Networks, Inc.,* 107 F.Supp.2d 325, 332 (S.D.N.Y.2000) ("[A] private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of

similar conduct directed at the public generally." (citations omitted; internal quotations omitted)).

*The City of New York v. Coastal Oil New York, Inc.,* No. 96 Civ. 8667 (RPP), 1999 WL 493355, at *14 (S.D.N.Y. July 12, 1999) (construing New York Court of Appeals holdings as "inconsistent with the proposition that egregious tortious conduct can support an award of punitive damages without an additional finding that the conduct was directed at the public generally." (citations omitted)).

*RNB Garments Philippines, Inc. v. Lau,* No. 98 Civ. 4561 (DLC), 1999 WL 223153, at *6 (S.D.N.Y. April 16, 1999) ("Where the gravamen of a lawsuit is a breach of contract, punitive damages are only available when necessary to vindicate a public right." (citation omitted)).

*Baxter Diagnostics, Inc. v. Novatek Medical, Inc.,* No. 94 Civ. 5220 (AJP), 1998 WL 665138, at *2 (S.D.N.Y. Sept.25, 1998) ("However, where the breach of contract also involves a fraud evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, punitive damages are recoverable if the conduct was aimed at the public generally." (citations omitted; internal quotations omitted)).

*Kunica v. St. Jean Fin., Inc.,* No. 97 Civ. 3804 (RWS), 1998 WL 437153, at *8 (S.D.N.Y. Aug.3, 1998) ("However, where the breach of contract also involves a fraud evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, punitive damages are recoverable if the conduct was aimed at the public generally." (citations omitted; internal quotations omitted)).

*Parke–Hayden, Inc. v. Loews Theatre Mgmt. Corp.,* 789 F.Supp. 1257, 1267 (S.D.N.Y.1992) ("[P]unitive damages may not be awarded in breach of contract cases, unless the wrong is aimed at the public generally." (citations omitted)).

*Avnet, Inc. v. Am. Motorists Ins. Co.,* 684 F.Supp. 814, 816 (S.D.N.Y.1988) ("To sustain its claim for punitive damages ... plaintiff must set forth sufficient evidentiary allegations of ultimate facts pointing to a fraudulent scheme upon the public." (citations omitted; internal quotations omitted)).

*Purdy v. Consumers Distrib. Co.,* 648 F.Supp. 980, 981 (S.D.N.Y.1986) (requiring "a showing of wanton dishonesty as to imply a criminal indifference to civil obligations—morally culpable conduct directed at the general public, a public as opposed to a mere private wrong." (citations omitted; internal quotations omitted)).

*Colton, Hartnick, Yamin and Sheresky v. Feinberg,* 227 A.D.2d 233, 642 N.Y.S.2d 283, 283 (1996) ("Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." (citation omitted; internal quotations omitted)).

*Bibeau v. Ward,* 228 A.D.2d 943, 645 N.Y.S.2d 107, 110 (1996) ("Punitive damages may be recoverable under a breach of contract claim; however, such damages are limited to those instances where it is necessary to vindicate a public right." (citations omitted; internal quotations omitted)).

*Murray–Gardner Mgmt. Inc. v. Iroquois Gas Transmission Sys. L.P.,* 229 A.D.2d 852, 646 N.Y.S.2d 418, 420 (1996) ("Likewise, plaintiff's request for punitive damages was properly dismissed in the absence of a showing by plaintiff that defendant engaged in egregious tortious conduct toward it that was part of

a pattern directed at the public generally." (citations omitted)).

*Supreme Auto. Mfg. Corp. v. Cont'l Cas. Co.*, 126 A.D.2d 153, 512 N.Y.S.2d 820, 822 (1987) (requiring "a showing of wanton dishonesty as to imply a criminal indifference to civil obligations—morally culpable conduct directed at the general public, a public as opposed to a mere private wrong." (citations omitted; internal quotations omitted)).

*Samovar of Russia Jewelry Antique Corp. v. Generali*, 102 A.D.2d 279, 476 N.Y.S.2d 869, 872 (1984) (same).

*Katz v. The Dime Sav. Bank, FSB*, 992 F.Supp. 250, 253–54 (W.D.N.Y.1997) (questioning the continuing validity of *Aero Garage* but dismissing plaintiff's demand for punitive damages in breach of contract because "[h]is complaint does not allege *any* public wrong, moral turpitude, *or* wanton dishonesty." (emphasis added)).

III. *CASES IN WHICH THE STANDARD THE COURTS APPLIED TO DETERMINE THE APPROPRIATENESS OF AN AWARD OF PUNITIVE DAMAGES IN CONNECTION WITH A BREACH OF CONTRACT CLAIM REQUIRED CONDUCT EXHIBITING A PARTICULARLY HIGH DEGREE OF MORAL CULPABILITY AS AN ALTERNATIVE TO CONDUCT DIRECTED AT THE PUBLIC GENERALLY*

*Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 509 (2d Cir.1991) (in sustaining punitive damages award arising from default judgment on a complaint asserting claims for, among other things, breach of contract and fraud, the Second Circuit explained: "Under New York law, punitive damages are appropriate in cases involving gross, wanton, or willful fraud or other morally culpable conduct.... Such conduct need

not be directed at the general public." (citations omitted; internal quotations omitted)).

*Brink's Inc. v. The City of New York*, 717 F.2d 700, 704–705 (2d Cir.1983) (Second Circuit sustained an award of punitive damages where negligence and breach of contract claims "were interlaced with one another and essentially rested upon the same conduct ... [and where] negligence by one contracting party caus[ed] injury to the other," and noted, in so doing, that "New York law does not preclude the award of punitive damages where conduct that gives rise to a contract action is also tortious." (citations omitted; internal quotations omitted)).

*Ladenburg Thalmann & Co. Inc. v. Imaging Diagnostic Sys., Inc.*, 176 F.Supp.2d 199, 207 (S.D.N.Y.2001) ("[T]o be awarded punitive damages for breach of contract, a party must show that: such damages are necessary to vindicate a public right; the misconduct is egregious and may be characterized as gross and morally reprehensible; *or* the misconduct involved such wanton dishonesty as to imply a criminal indifference to civil obligations." (citation omitted; emphasis added; internal quotations omitted)).

*Wright v. Carleton Coll.*, No. 00 Civ. 3335 (AKH), 2000 WL 1474408, at *3 (S.D.N.Y. 2000) ("Under New York law, punitive damages are not available in actions for breach of contract unless *either* (1) the wrong is aimed at the public generally, *or* (2) there is an extraordinary showing of dishonesty or bad faith." (citations omitted; emphasis added; internal quotations omitted)).

*Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, No. 95 Civ. 8450(AGS)(THK), 1998 WL 422482, at *8 (S.D.N.Y. July 22, 1998) ("Under New York law, punitive damages may be recovered on a breach of contract claim in only

limited circumstances: where they are necessary to vindicate a public right; where a defendant has engaged in egregious conduct that can be characterized as gross and morally reprehensible; *or* where a defendant's conduct may be characterized by such wanton dishonesty as to imply a criminal indifference to civil obligations." (citations omitted; emphasis added; internal quotations omitted)).

*Bonnie & Co. v. Bankers Trust Co.*, 945 F.Supp. 693, 715 (S.D.N.Y.1996) ("[P]unitive damages are an appropriate remedy in a breach of contract action only where they are necessary to vindicate a public right ... *or* where a defendant has engaged in such wanton dishonesty as to imply a criminal indifference to civil obligations." (citations omitted; emphasis added; internal quotations omitted)).

*Jackson v. Kump*, No. 93 Civ. 3519 (LMM), 1994 WL 9691, at *6 (S.D.N.Y. Jan. 13, 1994) ("In New York, however, even where a public right is not at issue, punitive damages might be available for breach of contract.").

*Baker v. Combe Inc.*, No. 90 Civ. 5587 (RLC), 1991 WL 183728, at *3 (S.D.N.Y. Sept.10, 1991) ("Punitive damages may be awarded in a breach of contract case only where a defendant has engaged in wrongdoing involving fraudulent behavior directed toward the public generally *or* involving high moral turpitude implying criminal indifference to a civil obligation." (citations omitted; emphasis added)).

*Banco Nacional de Costa Rica v. Bremar Holdings Corp.*, 492 F.Supp. 364, 374 (S.D.N.Y.1980) ("We conclude that today, a plaintiff suing for fraud or breach of contract under New York law can recover punitive damages even though the fraud involved was not 'aimed at the public generally.' ").

*Halpin v. Prudential Ins. Co. of Am.*, 48 N.Y.2d 906, 425 N.Y.S.2d 48, 401 N.E.2d 171, 171–72 (1979) ("Inasmuch as plaintiff's action is grounded upon private breach of contract, and does not seek to vindicate a public right *or* deter morally culpable conduct, punitive damages are not recoverable." (citations omitted; emphasis added)).

*Ciraolo v. Miller*, 138 A.D.2d 443, 525 N.Y.S.2d 861, 862 (1988) ("It is well established that in an action grounded upon private breach of contract, punitive damages may not be awarded. Only when the fraudulent behavior is directed toward the public generally *or* involves allegations of high moral turpitude so as to imply criminal indifference to a civil obligation is an award of punitive damages proper." (citations omitted; emphasis added; internal quotations omitted)).

*Minjak Co. v. Randolph*, 140 A.D.2d 245, 528 N.Y.S.2d 554, 557–58 (1988) ("The determining factor is not the form of the action but the moral culpability of the defendant, and whether the conduct implies a *criminal indifference to civil obligations.*" (citation omitted; internal quotations omitted)).

*Home Ins. Co. of Indiana v. Karantonis*, 124 A.D.2d 368, 507 N.Y.S.2d 489, 490 (1986) ("Inasmuch as defendants' counterclaim is grounded upon private breach of contract and does not seek to vindicate a public right *or* deter morally culpable conduct, punitive damages are not recoverable." (citation omitted; emphasis added)).

*Kwatinetz v. JWP, Inc.*, No. Civ. 86–3069, 1988 WL 70148, at *2 (E.D.N.Y. June 6, 1988) ("Under New York law, absent an allegation of fraud aimed against the public *or* morally culpable conduct, punitive damages cannot be recovered in a breach of contract action." (citations omitted; emphasis added)).

IV. *CASES IN WHICH THE STAN-*
*DARD COURTS APPLIED TO*
*DETERMINE THE APPROPRI-*
*ATENESS OF AN AWARD OF*
*PUNITIVE DAMAGES IN CON-*
*NECTION WITH A BREACH OF*
*CONTRACT CLAIM UNDER PAR-*
*TICULAR CIRCUMSTANCES*
*MADE NO MENTION OF THE*
*"PUBLIC AIM" FACTOR OR IN-*
*DICATED THAT SUCH AN ELE-*
*MENT IS NOT REQUIRED*

*New Spectrum Realty Servs., Inc. v. The*
*Nature Co.*, 42 F.3d 773, 777 (2d Cir.1994)
(Second Circuit acknowledged the avail-
ability of punitive damages under New
York law in cases of "willful frustration of
[a plaintiff's] rights under an unambiguous
contract," but holding that this doctrine
did not apply to the facts of the case
before it (discussing *Aero Garage* )).

*Ostano Commerzanstalt v. Telewide Sys.,*
*Inc.*, 880 F.2d 642, 649 (2d Cir.1989) (with-
out requiring a showing of public aim, the
Second Circuit upheld an award of punitive
damages in a breach of contract action
because "[the individual defendant] *entered*
*the transaction* with the clear and blatant
intent to defraud." (citation omitted; em-
phasis added));

*Brink's Inc. v. The City of New York*, 717
F.2d 700, 704–705 (2d Cir.1983) (Second
Circuit sustained an award of punitive
damages where negligence and breach of
contract claims "were interlaced with one
another and essentially rested upon the
same conduct ... [and where] negligence
by one contracting party caus[ed] injury to
the other," and noted, in so doing, that
"New York law does not preclude the
award of punitive damages where conduct
that *gives rise* to a contract action is also
tortious." (citations omitted; emphasis
added; internal quotations omitted)).

*Miller v. European Am. Bank*, 921
F.Supp. 1162, 1167 (S.D.N.Y.1996) ("Puni-

tive damages are generally not recoverable
under actions for breach of contract ...
unless the defendant's actions involve a
degree of bad faith evincing a disingenuous
or dishonest failure to carry out a con-
tract." (citations omitted; internal quota-
tions omitted)).

*Career Initiatives Corp. v. Palmer*, 893
F.Supp. 295, 296 (S.D.N.Y.1995) ("Under
New York law, punitive damages are not
available in breach of contract actions, un-
less the wrong is aimed at the public gen-
erally.... The only *exception to this rule*
exists in cases where there is an extraordi-
nary showing of a disingenuous or dishon-
est failure to carry out a contract." (cita-
tions omitted, emphasis added; internal
quotations omitted)).

*Ox v. The Union Cent. Life Ins. Co.*, No.
94 Civ. 4754 (RWS), 1995 WL 296541, at
*6 (S.D.N.Y. May 15, 1995) ("New York
courts have traditionally held that punitive
damages are not available in cases of sim-
ple breach of contract.... An *exception* to
this has been enunciated for those cases
that involve a degree of bad faith that
evinces disingenuous or dishonest failure
to carry out a contract." (citations omitted;
emphasis added)).

*Jackson v. Kump*, No. 93 Civ. 3519
(LMM), 1994 WL 9691, at *6 (S.D.N.Y.
Jan. 13, 1994) ("In New York, however,
even where a public right is not at issue,
punitive damages might be available for
breach of contract." (discussing *Aero Ga-*
*rage* )).

*AML Int'l Ltd. v. Orion Pictures Corp.*,
No. 89 Civ.2048 (KMW), 1991 WL 120323,
at *4 (S.D.N.Y. June 24, 1991).

*Gordon v. Nationwide Mut. Ins. Co.*, 30
N.Y.2d 427, 334 N.Y.S.2d 601, 285 N.E.2d
849, 854 (1972) ("[T]he punitive nature of
damage for the bad faith breach of con-
tract is a characteristic of the law of con-
tracts generally .... But a punitive mea-

sure of damages is not applied routinely for breach of contract; and bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract.").

*Suffolk Sports Center, Inc. v. Belli Constr. Corp.,* 212 A.D.2d 241, 628 N.Y.S.2d 952, 956 (1995) ("[The defendant's] actions involve that degree of bad faith evincing a disingenuous or dishonest failure to carry out [the parties'] contract so as to justify the imposition of punitive damages .... In this regard, we note that, although [the defendant's] actions were not specifically directed at the public, nevertheless an award of punitive damages is appropriate ...." (citations omitted; internal quotations omitted)).

*Cross v. Zyburo,* 185 A.D.2d 967, 587 N.Y.S.2d 670, 671 (1992) ("The instant record reveals that the transaction in question was merely a private one between the plaintiff and defendants. Therefore, in order to sustain a demand for punitive damages for a breach of contract, the plaintiff must show that the defendants' actions involved a degree of bad faith evincing a disingenuous or dishonest failure to carry out a contract." (citations omitted; internal quotations omitted)).

*Desai v. Blue Shield of Northeastern New York Inc.,* 178 A.D.2d 894, 577 N.Y.S.2d 932, 934 (1991) ("[W]here, as here, a plaintiff's claim for punitive damages is premised upon breach of contract, such damages are not recoverable absent an extraordinary showing of a disingenuous failure by the defendant to carry out its contract" (citation omitted)).

*The City of Amsterdam v. Daniel Goldreyer, Ltd.,* 882 F.Supp. 1273, 1284 (E.D.N.Y. 1995) ("However, the applicability of punitive damages in breach of contract actions is not limited to public rights.... Plaintiff ... has properly alleged that Defendants knowingly misrepresented their actions

with the intent to deceive." (citations omitted)).

*Hudson Motors P'ship v. Crest Leasing Enters., Inc.,* 845 F.Supp. 969, 974–75 (E.D.N.Y.1994) ("If the wrong associated with the breach is not aimed at the public, but the actions of the breaching party involve that degree of bad faith evincing a disingenuous or dishonest failure to carry out a contract, ... then punitive damages are appropriate." (citations omitted; internal quotations omitted)).